CARL A. BERNER, Plaintiff, v. WILLIAM H. McHENRY, Judge.

INTOXICATING LIQUORS: Permit Holder—Malt Liquor—Beverage. A permit holder cannot legally sell a *malt* liquor containing alcohol and which could be and was used as a beverage. To legally sell that which contains a malt liquor its distinctive character must be so changed that it becomes incapable of use as a beverage. Evidence held to show that ''Pabst Extract'' was a malt liquor.

*Certiorari from Polk District Court.*—HON. WILLIAM McHENRY, Judge.

WEDNESDAY, MARCH 17, 1915.

PLAINTIFF was found guilty of the violation of a liquor injunction, and a fine of $200.00 was imposed. He brings the case here by certiorari. The petition is dismissed, and the judgment—*Affirmed.*

*Stewart & Hextell,* for plaintiff.

*M. S. Odle,* for defendant.

PRESTON, J.—Plaintiff is the proprietor of a drug store in Des Moines and is a registered pharmacist. He is charged with, and admitted, selling Pabst Extract. He did not claim to be operating under the now defunct mulct law.

1. INTOXICATING LIQUORS: permit holder: malt liquor: beverage.

Witnesses purchased a bottle of the extract from plaintiff's clerk, for which they paid twenty-five cents. It was identified as an exhibit and offered in evidence. The label thereon was also offered in evidence. It is as follows:

''Pabst Extract. The best tonic. Not over five per cent alcohol. Contains 12 oz. A liquor preparation of malt and hops. Pabst Milwaukee trade mark, with a B in the center.

Pabst Brewing Company, Wilwaukee, Wisconsin, U. S. A. Guaranteed by Pabst Brewing Company under the Food and Drug Act June 30, 1869. Serial No. 1921. Combined with calciumhypophosphite and ironpyrophosphate.''

The other side of the bottle: ''Pabst Extract the best tonic. Under the above name we manufacture this liquor preparation of malt and hops. It is not offered as a cure-for-all remedy, but we are satisfied that it will fully meet the demands of the medical profession and a general public as the most efficacious, remedial agency to build up the constitution, strengthen the nervous system, restore sound, refreshing sleep, promote a good digestion, insure a healthy appetite, and God-send to nursing mothers, it is a purely medical preparation and not sold as a beverage.

''Directions for using: Loss of appetite, a wine-glass full taken half an hour before each meal and before retiring at night will soon restore a healthy appetite.

''Dyspepsia. Discontinue the use of ice water, coffee, milk and all strong liquors, and use the best tonic especially with each meal or luncheon. Quick relief will be the result.

''Persons suffering from the loss of sleep should take a wine-glass full, two or more if necessary, every night before retiring.

''Nursing mothers should use the Best Tonic liberally at every meal and luncheon. It will strengthen for the ordeal and produce abundant food for the child.

''Consumption. Consumptives or those suffering from fevers and other wasting diseases, or those unable to partake of or retain solid food, will derive great benefit from a liberal use of the Best Tonic. Cod Liver Oil is most easily taken with the best tonic, the latter preventing nausea and aiding the ready assimilation of the oil.

''Coughs and Colds. A wine-glass or two of the best tonic sweetened with sugar, taken hot before retiring at night will afford relief and assist in breaking up the most obstinate cold.

"Convalescents. Those recovering from any sickness will find that they will get strength and health back with surprising rapidity if they use the best tonic.

"Dose. A wine-glass at each meal and one before retiring which equals one bottle each day. Pabst Brewing Company."

There is evidence from some of the witnesses that they bought Pabst Malt at other places and drank it as a beverage. Two witnesses testify that it tastes like beer. That they had bought it at the saloons. The witness who purchased the bottle in question testifies that at that time, and before he bought the extract, he inquired of the clerk and tried to buy some whisky, and then asked for the malt which he saw there. There is no evidence that it was purchased to be used as a medicine. Witness says that he did not use it for a beverage or buy it with the intention of drinking it; that he got it so that he could report it.

The plaintiff, Berner, testifies that he kept only a small quantity of this extract and that there was but little call for it. He says that he has not been selling except on doctors' orders; that he files the prescriptions away; that he only sells it on doctors' written orders. But the sale in this instance was not made in that manner. He produced and offered in evidence a ruling of the Treasury Department at Washington that this extract was not subject to the revenue tax.

Other witnesses give it as their opinion that the extract is not suitable for use as a beverage. Some of these are medical witnesses. One of the doctors says that he calls it a malt tonic, and that he has prescribed it many times, and it is prescribed as a medicine; that he has never known it to be used as a beverage; that it is not palatable; says he has never analyzed it, and was asked this question on cross examination:

Q. "You would say it is a malt liquor?"
A. "Yes, but it is not a beverage."

Another medical witness was asked:

Q. "What effect does that calciumhypophosphite have on it?"

A. "It is introduced in there to get the phosphorus as a tonic to the nerves."

Q. "And the ironpyrophosphate?"

A. "Both for the iron and phosphate. The bitter taste is due principally to the iron and hypophosphate of calcium and pyrophosphate of iron."

The evidence does not show the amount or proportion of these ingredients in this liquor. A wholesale druggist testified that this extract is considered as simply a medicinal preparation, and stated that he did not consider it as a malt liquor.

This is the substance of the evidence, although we have not attempted to give all of it.

The errors assigned are: First, that there was no sufficient or competent evidence upon which the court could find that the contents of the bottle in question was a malt liquor; second, the evidence was conclusive that it was purely a medicinal preparation, and that the court erred in holding that the sale of a malt medicine is in violation of Sec. 2385 of the Code and Sec. 2382 of the Code and Supplement; third, that the court erred in holding, as it did, that, "This bottle before me professes on its face to contain alcohol and malt. That being so, it is and must be and can only be a malt liquor which the statutes prohibit the selling of by any druggist. Even those holding permits cannot sell a malt liquor which is a liquor made of malt and alcohol. If it contains those two elements it is a malt liquor."

Plaintiff's proposition, as he states it, is that Sec. 2382 does not apply to the case under consideration, nor does the first half of 2385; and second, that a registered pharmacist has the authority to sell liquid preparations as a medicine even though such preparations contain malt and a small per cent of alcohol, or both, if said preparation is so compounded with

other ingredients as to lose its distinctive character as an intoxicating liquor and is no longer desirable as a stimulating beverage, but is in fact a medicine and sold for such purpose only, and cites in support of his proposition the last half of Code Sec. 2385 and the following Iowa cases: *Application of Henery,* 124 Iowa 358; *McNiel v. Horan,* 153 Iowa 630; *State v. Gregory,* 110 Iowa 624; *State v. Laffer,* 38 Iowa 422.

As before stated, the plaintiff, in his second proposition, contends that a pharmacist has authority to sell a liquid preparation as a medicine even though it contains malt and alcohol, or both, if it is in fact a medicine and sold for that purpose only.

It will be observed that the testimony in this case does not show that the sale made by plaintiff's clerk was made for medicinal purposes, nor that it was sold upon a physician's prescription, but shows that it was sold to the party who had called for whisky. If it was sold as a beverage, then under the authorities and the evidence in this case, there can be no question but that it is such a liquid as may be used as a beverage, and therefore prohibited. In other words, if its distinctive character as an intoxicating liquor was so destroyed that it could not be used as a beverage and it became in fact a medicine to be used for diseases, and of such a character that it could not in reason be styled or used as an intoxicating drink, its sale was not in violation of law. We do not understand the statutes and decisions to be as broad as plaintiff states in his second proposition in regard to sale by pharmacists of malt liquor.

The statute, Sec. 2385, provides in the first part of the section that persons holding permits may sell and dispense intoxicating liquors, not including malt liquors, and the second part of the section is, that registered pharmacists . . . may buy from permit holders intoxicating liquors (not including malt) for the purpose of compounding medicines, etc., but nothing herein contained shall be construed to authorize the manufacture or sale of any preparation or compound under

any name, form or device which may be used as a beverage and which is intoxicating in its character.

Some of the definitions for liquor are:—Any liquid substance, as water, milk, blood, sap, juice or the like; (2) specifically alcoholic or spirituous fluid, either distilled or fermented, as brandy, wine, whisky, beer, etc. Webster's International Dictionary.

We are of the opinion that, under the evidence in this case, the substance sold by plaintiff is a malt liquor and such as prohibited by the statutes, and that it comes within the holdings of this court in *Sawyer v. Botti,* 147 Iowa 453; *State v. Colvin,* 127 Iowa 632. It contained alcohol, and could be and was used as a beverage.

In the *Botti* case, it is pointed out that Sec. 2382 of the Code prohibits the selling or keeping for sale, etc., of "any intoxicating liquor, which term shall be construed to mean alcohol, ale, wine, beer, spirituous, vinous, and malt liquor and all intoxicating liquor whatever," except as otherwise provided, and it was said that "It is apparent, therefore, that the prohibition is twofold; first, of the sale of any liquor which is in fact intoxicating, and second, of certain described liquors whether intoxicating or not. In the second class are enumerated beer and malt liquor, and if the beverage in question is beer or malt liquor, then the fact that it is so manufactured as not to be intoxicating in its ordinary use as a beverage is immaterial;" citing cases.

It follows then that the conviction was right. The defendant moves that he have judgment in this court against the plaintiff for $25.00 attorney's fee in this court, which is allowed and will be taxed. The certiorari proceedings are dismissed and the judgment—*Affirmed.*

DEEMER, C. J., EVANS, LADD and WEAVER, JJ., concur.