J. B. McNiel, Plaintiff, v. L. J. Horan, Judge of the Seventh Judicial District of Iowa, Defendant.

**Intoxicating liquor:** SALE BY PHARMACISTS. Drugs and medicines
1 containing liquor or alcohol, but·so compounded that they can not be used as a beverage, may be lawfully sold by registered pharmacists, without a license to sell intoxicating liquors.

**Contempt:** *Certiorari*: FINDINGS OF LOWER COURT: CONCLUSIVENESS.
2 Where contempt proceedings are brought to the Supreme Court by *certiorari* the findings of the district court do not have the force and effect of a jury verdict, but will be reluctantly interfered with on a fair conflict of the evidence.

**Intoxicating liquor:** ILLEGAL SALE BY PHARMACIST. A preparation
3 of tonic bitters composed of herbs, rock candy, water and thirty percent alcohol is held to have been an intoxicant capable of use of a beverage, and could not lawfully be sold by a pharmacist as a medicine, except under a permit.

*Appeal from Muscatine District Court.*—Hon. L. J. Horan, Judge.

Friday, January 12, 1912.

Certiorari proceedings in the nature of an appeal. The facts appear in the opinion.—*Reversed.*

*Betty & Betty,* for appellant.

*J. F. Devitt,* for appellee.

Evans, J.—In August, 1908, a decree of injunction was entered against one Kuechmann, whereby he was enjoined from selling intoxicating liquors in violation of law within the county of Muscatine. In June, 1911, an infor-

mation was filed against him for contempt of court, in that he had sold intoxicating liquors within said county in violation of law and in violation of such injunction. The contempt proceeding was heard before the defendant herein as judge of the district court of such county, and at the conclusion thereof Kuechmann was discharged. A review of such action of the court is now sought by this proceeding. Kuechmann was a registered pharmacist, and owned and operated a drug store. As such, he sold "Centennial Tonic Bitters." This was an alleged compound consisting of various drugs, and containing thirty percent of alcohol. It was compounded by a wholesale house at Burlington, and purchased by Kuechmann in bottles, and sold in the same packages. The question upon which the controversy centered in the trial below was whether such compound was so medicated with other drugs as to have lost its distinctive character as an intoxicant, or whether it was still capable of being used as a beverage. Was it, in fact, a beverage, or was it a medicine?

Kuechmann, as a registered pharmacist, had a right to sell drugs and medicines, even though they contained intoxicating liquor or alcohol, provided they were so compounded that they could not be used as a beverage. In *State v. Gregory,* 110 Iowa, 624, it is said: "If the liquor was so compounded with other substances as to lose its distinctive character as an intoxicant, and to be no longer desirable as a stimulating beverage, and was in fact a medicine, then defendant was not guilty." To the same effect is *State v. Laffer,* 38 Iowa, 422. Whether the "Centennial Tonic Bitters" was in fact a medicine was a question of fact and not of law. *State v. Gregory, supra.* The trial court in effect found that it was medicine, and not a beverage.

I INTOXICATING LIQUOR: sale by pharmacists.

It is now urged in behalf of the defendant that such finding of fact by the court in the contempt proceedings is conclusive upon us in this certiorari proceeding. We

have never so held, nor are we prepared to do so now.

Where a certiorari proceeding is instituted
in the district court against an inferior
tribunal, and is brought before us on appeal
from the order of the district court therein,
we have held in such a case that the finding of fact by
the trial court has the force and effect of a verdict. *Remey
v. City of Burlington,* 80 Iowa, 470. Such is not the case
before us. Where a contempt proceeding is brought before
us for review upon writ of certiorari, it is sufficient to say
now that we are reluctant to interfere with the findings of
fact by the trial court upon a fair conflict in the evidence.

*2 Contempt: certiorari: findings of lower court: conclusiveness.*

We have gone through this record with a searchlight,
and we fail to find any substantial conflict in the evidence
on the pivotal proposition. The evidence on behalf of the
state disclosed the actual use of the liquor
in question as a beverage and the intoxicating
effects resulting therefrom. This was un-
disputed. The defense confined its evidence to expressions
of opinion by witnesses that the compound was a medicine,
and not a beverage. The principal witnesses upon this
question were two medical witnesses. Dr. J. D. Fulliam
testified as follows: "A liquid compounded as shown by
'Exhibit A' would be a medicine, and not desirable as a
beverage. It would be a tonic or medicine. Alcohol is the
best known means of extracting medicinal qualities of herbs
and roots; and is the best known means of preserving them
thereafter. Thirty percent of alcohol is a fair amount to
be contained in these bitters. I have some in my office
which contains thirty-six percent. Alcohol is nine percent
water. A man, if he would take a combination of quinine
and whisky and take enough of it, it would make him
pretty full and sick. And the use of alcohol in a medicine
stimulates the circulation; also stimulates the stomach. You
can't find a tonic but that has more or less alcohol in it."
Cross-examination: "Might be used as a beverage or tonic.

*3 Intoxicating liquor: illegal sale by pharmacist.*

The old topers might use it, some with abnormal appetites. Not a very pleasant taste. Has somewhat the taste of whisky or alcohol. Whisky has not a pleasant taste to me. It has the taste of whisky or aromatics in it with a slight bitter stomachic taste. Makes an agreeable tonic. Might make a pleasant drink as whisky."

Dr. E. B. Fulliam testified as follows: "Am a physician and surgeon in practice for thirty-two years. A liquid composed as shown in 'Exhibit A' would be a medicine. I have just tasted the medicine, and it is a mild tonic or a medicine." Cross examination: "This liquid is not desirable as a beverage, and I do not believe this liquid is capable of being used as a beverage; and, if used in excessive quantities, it would be detrimental. This liquid is intended as a stomachic, and is not desirable as a beverage. This medicine I could not bear the taste of. I couldn't drink it in a hundred years. It is thoroughly medicated. There is no doubt about that. And, if a man took large quantities of it, it would be likely to nauseate him. . . . The preparation contained in the formula might be used as a beverage by those insisting on using large quantities of it. It is palatable enough to be used as a beverage; if a man take sufficient of it, it might. The taste would not be so unpalatable that it could not be used as a beverage. Yes; it has a very pleasant taste. Could be used as a beverage, but would be very detrimental to the person using it. There is considerable rock candy in it. That is what makes it the pleasant taste and makes it palatable. Could get along without the rock candy, but the taste would be bitter. The rock candy takes away the bitterness. The rock candy makes it more palatable as a bitters and a better beverage. In my opinion fifteen percent alcohol would be sufficient to compound the ingredients. The more alcohol you put in, the more palatable it would be as a liquor drink. Beer has about two percent of alcohol. If you put quinine in alcohol, it would de-

stroy the alcoholic taste, and the alcoholic craving wouldn't be there. You could doctor that up very nicely with a little extract of licorice and make it palatable. You can mix up alcohol in certain herbs so as to make it palatable. The small amount of herbs, the alcohol, and rock candy in it does not destroy the palatability of it; no. To some people it would be a very disagreeable drink, and to others it would be a very pleasant drink. I suppose that to people who desire an intoxicant it might make a very pleasant and palatable drink."

If there is any fair conflict in the evidence, it must be found in the foregoing evidence of the medical witnesses. The evidence of the last witness is self-contradictory, and presents the only apparent conflict in the record. The compound in question consisted of water and alcohol medicated with a few bitter herbs and rock candy. The bitter herbs were intended to give medicinal character to the compound and to make the same nonpalatable, while the rock candy was intended to overcome the bitterness of the herbs and to render the compound palatable. The mere fact that the compound had medicinal qualities does not necessarily destroy its suitability as a beverage. The only suggestion in the testimony of the medical witnesses as to the purpose of this medicine is that it is a "stomachic" and a "tonic." The formal opinion expressed by the witnesses must be taken in the light of their entire examination. It appears conclusively from the testimony as a whole that the compound in question was capable of use as a beverage, and that it was actually used as a beverage, and that it was highly intoxicating in character. It follows that the learned district judge erred in the discharge of the injunction defendant, and that the order of discharge must be annulled.—*Reversed.*