STATE OF IOWA, ex rel. H. M. HAVNER et al., Complainants, v. C. W. MULLAN, Judge, Respondent.

INTOXICATING LIQUORS: Contempt — Conviction — Certiorari—
1 Clear Preponderance of Evidence Sufficient. Conviction upon charge of contempt in violation of liquor injunction does not require proof beyond a reasonable doubt. A clear preponderance is sufficient.

INTOXICATING LIQUORS: Contempt — Conviction — Certiorari—
2 Rules of Review. On certiorari to review finding by trial court upon charge of contempt in violation of liquor injunction, the finding of the trial court is not final or conclusive upon the question whether the injunction has been violated, and the Supreme Court will look into the evidence; and if, in its judgment, after due consideration of the conclusion reached by the trial court, the contempt is clearly and satisfactorily established, it will not hesitate to reverse an acquittal.

**INTOXICATING LIQUORS:** Contempt—Certiorari—**Evidence.** Evidence reviewed, and held to show, by a clear preponderance of the evidence, that defendant was guilty of contempt in violating liquor injunction.

*Certiorari to Black Hawk District Court.*—C. W. MULLAN, Judge.

MARCH 18, 1919.

THE opinion states the case.—*Judgment annulled.*

*H. M. Havner,* Attorney General, *J. W. Kindig,* Assistant Attorney General, and *E. J. Weimer,* County Attorney, for the State.

*Pickett, Swisher & Farwell,* for respondent.

WEAVER, J.—A petition was filed by the county attorney of Black Hawk County, Iowa, charging one L. O. Heiber with the keeping and maintenance of a liquor nuisance, and asking that the same be enjoined. A temporary writ was issued, and thereafter, upon final hearing, the injunction was made permanent. Later, the county attorney filed an information, charging the defendant, Heiber, with a violation of the injunction, and asking that he be punished for contempt. This accusation being denied, the issue came on for trial to the district court, presided over by the respondent herein named. The testimony having been heard, the court dismissed the complaint and discharged the defendant. Thereupon, the State, by its attorney general, instituted this proceeding for a writ of certiorari to review the action and judgment of the trial court. In this petition for the writ, the State, among other things, alleged, in substance, that, although the alleged violation of the injunction was established by a preponderance of the evidence, the trial court held and ruled that the proceeding was criminal in its nature, and that the charge of contempt could be sustained only on proof of the violation of the injunction, be-

yond a reasonable doubt. On application of complainants, and order thereon, respondent was required to amend his return by certifying whether he had held that conviction of the accused could not be had on proof of guilt by preponderance of evidence, and whether he had discharged the accused because of failure to prove his guilt beyond reasonable doubt. Respondent made return in words following, in so far as pertinent:

"I further certify that said action was tried before me, upon oral testimony, produced in behalf of the State and in behalf of the defendant. That, upon the conclusion of the testimony and the argument of counsel, I reached the conclusion that the State had not established, even by a preponderance of the credible evidence, that the defendant Heiber was guilty of a violation of the injunction issued by me."

On the trial of the contempt proceedings, the State produced as witnesses two state agents in the service of the department of justice, who testified that, on two different occasions in June, 1917, the 13th and 14th, they purchased intoxicants from the defendant, Heiber, at his place of business in Waterloo; that he took same from his soda fountain; and that samples of the liquor so procured were submitted for analysis to the chemist of the state food and dairy department. The chemist was also produced, and testified that the liquor, on analysis, proved to contain alcohol to the extent of 5 per cent or more by volume. Proof was also made that, two days after the last sale, the defendant's place of business was searched, and under the marble board of a soda fountain, there were found 32 one-ounce bottles, filled with whisky. It also appeared that defendant had been previously convicted and fined for violation of the liquor laws, and that a permanent injunction had been entered against further offense of that nature by him within the jurisdiction of the court.

The defendant Heiber testified in his own behalf that said agents asked him for ginger high balls, and he told them he had none to serve, and on their request, sold them ginger ale; denied having made any sale of liquor on the premises since his last conviction of such offense in April of the same year; denied that he had any liquor in the store on the day of the search and seizure; and testified that he knew nothing of the liquor in the small bottles until they were brought in in the search,—that he did not own them, and did not place them in the soda fountain. One Horch testified that he was a clerk in the service of the defendant, and that the liquor in the small bottles belonged to him, and that he placed them in the soda fountain for the use of himself and a friend, one Gehrig, upon a fishing trip which they had arranged for the following day. Gehrig also testified to the proposed fishing excursion, and that Horch had promised to "furnish the ammunition." This is the substance of all the testimony, except that of a clerk or two in defendant's store, who denied all knowledge of the sale or keeping for sale of liquors by the defendant.

I.   It is evident from the record that, in suing out this writ of certiorari, the first purpose of the relators was to test the correctness of the ruling which they understood the trial court to announce: that, to sustain a conviction for contempt, a violation of the injunction must be shown by the evidence beyond a reasonable doubt. The respondent concedes that, in disposing of the case, he did make use of the language attributed to him, but further certifies that, in his judgment, after hearing all the evidence, the accusation against the defendant did not have the support of a preponderance of the evidence. While precedents from other jurisdictions upon this question are in more or less confusion, it is settled in this state that conviction upon charge of contempt does not

1. INTOXICATING LIQUORS : contempt : conviction : certiorari : clear preponderance of evidence sufficient.

require proof beyond a reasonable doubt. A clear preponderance is sufficient. *Nies v. Anderson,* 179 Iowa 326, 331; *Sawyer v. Hutchinson,* 149 Iowa 93; *Hake v. People,* 230 Ill. 174 (82 N. E. 561).

II. The relators further argue that the evidence in support of the charge of contempt is so clearly preponderating that the ruling of the trial court should be set aside, and the defendant adjudged guilty. On the other hand, it is contended for the defendant that the finding of the trial court is conclusive, and not subject to review upon appeal or certiorari. It is, however, the settled doctrine in this state that contempt proceedings based upon an alleged violation of an injunction issued by authority of the statute to restrain violations of the prohibitory liquor law are reviewable by this court. Indeed, the general statute upon the subject of contempts, requiring the court to preserve all the evidence taken and certify it to this court in making return to a writ of certiorari, carries with it the implication that it may be made the subject of review. *Keenhold v. Dudley,* 178 Iowa 526, 533; *Wells v. District Court,* 126 Iowa 340. Moreover, whether it has been expressly pointed out or not, it is true that we have, in practice, recognized a distinction between proceedings to punish violations of injunctions authorized by statute to restrain acts forbidden by law, and others in which the contempt is more directly and exclusively against the authority and dignity of the court. In the latter, the chief purpose is to vindicate the court's authority and enforce the respect due to it; while in the former, there is the further and paramount purpose to secure obedience to the statute. The cases in which we have reviewed proceedings of this latter class, and in which we have reversed both convictions and acquittals in contempt proceedings, are too numerous to call for any citation of the precedents. Whether the hearing in this cause is

2. INTOXICATING LIQUORS: contempt: conviction: certiorari: rules of review.

*de novo*, in the sense in which that term is used in equity
cases, it is unnecessary to consider. In *Sawyer v. Hutchinson*, 149 Iowa 93, after some reference to our earlier cases,
this court, speaking by Deemer, J., said, "Doubtless under
these decisions the trial here is *de novo.*" In a later case,
without referring to the first cited case, it is said, "On the
whole, we think the rule is that the review is not *de novo*"
(*Nies v. Anderson*, 179 Iowa 326, 331), a statement which
is followed by the further holding that, "while the finding
below has weight, it does not have as much as has a verdict;
and that, while evidence to sustain a finding of guilty must
amount to more than the mere preponderance which sus-
tains an ordinary recovery on the law side, it is not required
to prove violation of an injunction beyond a reasonable
doubt." Both statements involve the rule that this court
will look into the evidence, and if, in its judgment, after due
consideration of the conclusion reached by the trial court,
the contempt is clearly and satisfactorily established, it
will not hesitate to reverse an acquittal; and if guilt be
not so shown, it will reverse a conviction. This right and
authority we have constantly exercised, ever since the en-
actment of the first statute providing for such injunctions,
by the twentieth general assembly. It matters little what
technical name be given it; it is sufficient that the finding
by the trial court is not final or conclusive upon the ques-
tion whether the injunction has been violated. The stat-
ute under which liquor injunctions are authorized is a de-
parture from the rule heretofore existing that the writ
would not issue to prevent the commission of a public of-
fense, and its purpose would often be frustrated if proceed-
ings to punish disobedience to such writ were not review-
able. In ordinary cases, in the absence of statute, it is en-
tirely within the discretion of the trial court whether it will
take notice of a contempt of its writ or order; but, where
violation of a statutory injunction is clearly established, the

court has no discretion to ignore it or to discharge the offender without punishment.

In support of the finding below, the respondent invokes the rule that, upon doubtful findings of fact and the veracity of witnesses, this court will accord proper weight to the findings of the trial court. This proposi-

3. INTOXICATING LIQUORS : contempt : certiorari : evidence.

tion has often been asserted by us, and we have no inclination to recall it; but we have never given it such extreme effect as to permit it to control our judgment when the record is so clear and conclusive as to produce in our own minds a thorough conviction that the ruling of the trial court was wrong. The record is brief, and we have given it repeated and careful examination, and can reach no other conclusion therefrom than that the charge of contempt made against the accused was so clearly established that to dismiss it will amount to a manifest failure of justice. The proof discloses all the familiar earmarks and subterfuges which accompany and characterize the conduct of a persistent violator of our liquor laws. It is true that defendant denies the charge in general, but his denial is clearly overcome by the testimony offered by the prosecution. Two unimpeached witnesses testify to purchases of intoxicating liquors from the defendant at his place of business on two different days, and that the liquor so sold them was taken from or prepared at a soda fountain in the room. They also testify that they preserved samples of the liquor, which were produced on the trial, and shown to contain over 5 per cent of alcohol. It was also shown without dispute, as we have already noticed, that, on searching the place, within a day or two after these sales, there were found 32 ounce bottles filled with whisky, in or under the soda fountain. The time-honored explanation by defendant's self-sacrificing clerk that he owned this whisky, and had himself prepared and placed it in the fountain in preparation for a Sunday

"fishing trip," is too flimsy to merit serious consideration. Just why he should carefully distribute it into a multitude of small bottles containing such a moderate-sized drink, he does not explain; but, had he assured the court that the bass in the Cedar River at Waterloo were educated to strike at such bait, it would add little, if anything, to the inherent improbability of his story. There was no impeachment of the character of the State's witnesses; their testimony is clear and consistent, and of such nature that we must either accept it as substantially true, or say we believe they committed wilful and deliberate perjury. Were the issue to be considered as resting solely upon the testimony of these witnesses, as against the simple denial of the defendant, it is possible that the court might, with some hesitation, adopt the view that there was no such preponderance as to justify a finding of defendant's guilt; but they are corroborated by too many significant circumstances to permit such result.

We hold that the record clearly establishes the defendant's guilt of the contempt charged, and the judgment dismissing him will be annulled and set aside, and the proceeding will be remanded to the trial court, with directions to enter judgment in harmony with this conclusion.— *Annulled.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.