STATE OF IOWA ex rel. JOHN B. HAMMOND, Petitioner, v. C. C. HAMILTON, Judge, Respondent.

**INTOXICATING LIQUORS:** Contempt—Medicated Liquors—Review on Certiorari. A finding by a trial court in contempt proceedings, on conflicting and irreconcilable testimony, that a concoction containing some 18 per cent of alcohol, i. e., Lash's Bitters, was so medicated as to render it incapable of use as an intoxicant, will not be disturbed on certiorari.

Headnote 1: 33 C. J. p. 704.

*Certiorari to Woodbury District Court.*—C. C. HAMILTON, Judge.

MARCH 11, 1924.

OPINION ON REHEARING JUNE 25, 1925.

ACTION in certiorari, to review the judgment of the respondent, judge of the Woodbury district court, in discharging a defendant charged with violating a decree enjoining him from selling or keeping for sale intoxicating liquor. The petition dismissed, writ discharged, and the judgment below—*Affirmed.*

*Ben J. Gibson,* Attorney-general, *B. J. Powers,* Assistant Attorney-general, and *J. W. Kindig,* for petitioner.

*Henderson, Fribourg & Hatfield, D. R. Forbes,* and *George E. Hise,* for respondent.

PER CURIAM.—The case above entitled and two others submitted together are original proceedings in certiorari to review the action of the respondent judge of the district court of Woodbury County in discharging certain defendants charged with contempt, alleged to have been committed in violating injunctions enjoining the defendants therein from engaging in traffic in intoxicating liquors.

It is admitted that the defendants in the contempt proceedings sold or kept for sale a concoction known as Lash's Bitters, and it is also admitted that the Lash's Bitters so kept or sold by them contained slightly more than 18 per cent of alcohol. It was the contention of the defendants that it contained such a proportion of cascara that it was no longer capable of use as a beverage, and had lost its character as an intoxicating liquor, and that its sale or keeping for sale was not in violation of law or the decrees of injunction. If the liquid was of the character claimed by the defendants, its sale was not prohibited by law. *State v. Gregory,* 110 Iowa 624; *McNiel v. Horan,* 153 Iowa 630; *Berner v. McHenry,* 169 Iowa 483; *Schraeder v. Sears,* 192 Iowa 604. The lower court so found.

The testimony is in conflict as to the amount of cascara found in the samples of the bitters examined. Expert witnesses for the State testified to finding about 4.5 per cent of solids, which they said consisted of something over 3.3 per cent of sugar, slightly over .1 per cent ash, and undetermined percentages of cascara, senna, cinnamon, and licorice. Witnesses for the defendants in the contempt proceedings testified that the

same samples of liquid contained 30 grains of cascara to the ounce. They did not use the same methods of testing and examination used by the witnesses for the State, and insisted that the determination of the amount of solid content of the liquid would not show the amount of cascara; that not all of the cascara would be found as a solid.

There was an equally sharp conflict in the testimony as to the effect that would be produced in one drinking the bitters. Some of the physicians and chemists testified that the liquid could be used as a beverage, and could be taken in sufficient quantity to produce intoxication; others, that the medicinal effect of the cascara, a laxative, would be such that sickness would result before sufficient could be taken to cause intoxication. They also differed as to whether alcohol was a necessary ingredient in the liquid, from a medicinal or chemical standpoint.

An equally marked conflict is to be found in the testimony of users of the bitters. One witness for the State testified that he drank it and became intoxicated by it; that, upon repeated use of it, the laxative effect was lessened. Another witness testified to observing intoxication in one who drank it. Others testified to using it as a medicine effectually, and that no effect of intoxication was produced. Some of the expert witnesses had taken it experimentally, and testified to the medicinal effect and the absence of any effect of intoxication.

It is sufficient to say, without setting out the testimony further, that the evidence as to the character of the liquid and the probable effect of its use from a medical viewpoint and its actual effect upon users was in irreconcilable conflict.

It does appear, however, without dispute that, in the days when the sale of intoxicating liquor was permitted by law, Lash's Bitters was sold in saloons; that it is now sold in so-called "soft drink parlors" by the drink; and that it is not usually sold in drug stores. These circumstances create a very strong suspicion that it is purchased and used more for its alcoholic character than for any medicinal effect it may have. It is a matter of common knowledge that many people who were accustomed to use intoxicating liquor, and who are unwilling to forego that indulgence, in obedience either to the public sentiment condemning its use or the mandate of the law prohibiting its sale, are

now drinking preparations for their intoxicating effect, that were once unthought-of as beverages, undeterred by the disastrous results to health, and even life itself. The courts should be zealous to prevent evasions of the laws against the traffic in intoxicants by the sale as beverages of preparations intended, or supposedly intended, for legitimate uses. Indeed, the statute so requires. Section 2431, Code of 1897 (Section 1922, Code of 1924).

But the duties and limitations of the courts in respect to cases of this character—charges of contempt in the violation of injunctional decrees against the sale or keeping for sale of intoxicating liquor—are well defined and understood. It is the province and duty of the trial court to determine the issues of fact according to the evidence. Violation of the injunction must be established by more than a mere preponderance of the evidence, but it is not necessary that it be so established beyond a reasonable doubt. *Nies v. Anderson,* 179 Iowa 326; *Bird v. Sears,* 187 Iowa 75.

The judgment of the lower court does not, in such cases, possess, in full measure, all the attributes of the verdict of a jury. *Nies v. Anderson,* supra; *Schraeder v. Sears,* supra; and *Arcuro v. Utterback* (Iowa), 195 N. W. 734 (not officially reported).

But, on the other hand, the case is not triable here *de novo;* and the findings of the trial court are entitled to weight in our consideration of the questions of fact presented by the record, especially where the testimony is conflicting, and much depends upon the credibility of the witnesses. *Cheadle v. Roberts,* 150 Iowa 639; *Dutton v. Anderson,* 163 Iowa 613; *Nies v. Anderson,* supra; *Rist v. District Court,* 162 Iowa 244; *Sawyer v. Hutchinson,* 149 Iowa 93; *McNiel v. Horan,* 153 Iowa 630; *Arcuro v. Utterback,* supra.

Had the trial judge reached a different conclusion, we would have had no hesitation in saying that his finding had sufficient support in the evidence; but, upon the conflicting testimony presented, we cannot say that his conclusion, arrived at after seeing and hearing the witnesses, is so lacking support in the testimony that we are, under the rules by which we must be guided, justified in overturning it. We take occasion to again

say, as we did in *Schraeder v. Sears,* supra, that we are not to be understood as determining whether Lash's Bitters is in fact a medicine or a beverage. All that we hold is that, on the record presented, it does not so clearly appear that it is capable of being used as a beverage as to justify us in reversing the judgment of the lower court that it is not susceptible of such use.

The proceedings below are affirmed, the petition herein dismissed, and the writ discharged.—*Affirmed.*