SAM ANDREANO, Petitioner, v. HUBERT UTTERBACK, Judge, Respondent.

INTOXICATING LIQUORS: Contempt—Certiorari—Sufficiency of Evidence. The court, on certiorari, will, on conflicting evidence, be reluctant to interfere with a conviction of contempt in violating an injunction; yet it does not necessarily follow that the conviction will be affirmed on such evidence. *The evidence must clearly and satisfactorily show guilt.*

Headnote 1:  33 C. J. p. 703.

Headnote 1:  5 R. C. L. 262.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

NOVEMBER 16, 1926.

Certiorari to test the sufficiency of the evidence to predicate a judgment in contempt against petitioner for the violation of a liquor injunction previously entered against him. The opinion sufficiently states the facts.—*Writ annulled.*

*Jensen & Connolly,* for petitioner.

*Vernon R. Seeburger,* County Attorney, and *Russell Jordan,* Assistant County Attorney, for respondent.

DE GRAFF, C. J.—This is a proceeding in certiorari. The writ issued from this court. But one issue is presented, to wit: whether the evidence, presently stated, sustains the contempt charged.. In ruling this proposition on principle, we are not unmindful that in our prior decisions there is a semblance of variance in the statement of the declared rule.

It must be borne in mind that we are not dealing with the statutory rule governing a new trial,—namely, that the verdict is not sustained by sufficient evidence, or is contrary to law or to the evidence. A contempt proceeding, in a strict sense, is neither civil nor criminal, but, for want of a better term, it is called quasi criminal. *Carr v. District Court of Van Buren County,* 147 Iowa 663.

A different rule is applied in criminal than in civil cases, and this court, though proceeding cautiously, will, on appeal, interfere in the former more readily than in the latter. *State v. Wise,* 83 Iowa 596; *State v. Pilkington,* 92 Iowa 92. This differentiates the "reasonable doubt" from the "preponderance of evidence" rule.

A contempt proceeding occupies what may be termed the twilight zone between civil and criminal cases, and this explains the statement that, "while the finding below has weight, it does not have as much as has a verdict; and that, while evidence to sustain a finding of guilty must amount to more than the mere preponderance which sustains an ordinary recovery on the law side, it is not required to prove violation of an injunction beyond a reasonable doubt." *Nies v. Anderson,* 179 Iowa 326. See, also, *State ex rel. Havner v. Mullan,* 185 Iowa 794; *State ex rel. Hammond v. Hamilton,* 200 Iowa 343.

The foregoing rule, if it may be called a rule, is not at all helpful in the decision of cases of this character. It may further be observed that we do not review a punishment for contempt *de novo. Nies v. Anderson,* supra; *Nies v. Jepson,* 174 Iowa 188; *State ex rel. Hammond v. Hamilton,* supra. The right of appeal

does not lie in the instant case, and the only remedy to review is by certiorari. Section 12550, Code of 1924.

Does it follow that this court must give the finding of the trial court the force and effect of a verdict? This is to say, if the evidence presents a conflict, shall this court apply the rule governing an appeal in a law action? We answer in the negative. In *McNiel v. Horan*, 153 Iowa 630, it is said:

"It is now urged in behalf of the defendant that such finding of fact by the court in the contempt proceedings is conclusive upon us in this certiorari proceeding. We have never so held, nor are we prepared to do so now. * * * Where a contempt proceeding is brought before us for review upon writ of certiorari, it is sufficient to say now that we are reluctant to interfere with the findings of fact by the trial court upon a fair conflict in the evidence."

This is a sane and safe rule, and was followed in *Schraeder v. Sears*, 192 Iowa 604, wherein it is said:

"The findings of the trial court on contempt proceedings do not have the force of a jury verdict."

However, prior to the decision in the *McNiel* case, supra, this court held (*State v. Certain Intoxicating Liquors*, 76 Iowa 243) that "this finding has the force and effect of a verdict of a jury, and cannot be disturbed if more than one conclusion can be fairly drawn from the evidence," and subsequently, in *Rist v. District Court of Polk County*, 162 Iowa 244, it is said:

"There was such a conflict in the evidence that we should not interfere with the finding of the district court."

Regardless of the apparent conflict in the statement of the effect of the court's finding in its relation to a verdict, we now reaffirm that "the judgment of the lower court does not, in such cases, possess in full measure all the attributes of the verdict of a jury" (*State ex rel. Hammond v. Hamilton*, supra), and that, "to warrant a conviction, the guilt of the accused must be established by clear and satisfactory evidence." *Burtch v. Zeuch*, 200 Iowa 49 (39 A. L. R. 1349) ; *Sawyer v. Hutchinson*, 149 Iowa 93; *Russell v. Anderson*, 141 Iowa 533.

Clearly, the finding of the court that a contempt has been committed is not conclusive on review, and, if it appears from all the facts, as shown by the return, that the act charged and found does not constitute a contempt, the writ issued by this

court will be sustained. The findings and decision of the lower court should not be "lightly reversed," but the guilt of the accused must be shown by clear and satisfactory evidence. This makes it unnecessary to state the governing rule by way of comparison to a jury verdict. The search is to find the evidence to sustain the act charged, and it is for this court to say, having due regard for the findings of the lower court, but without viewing the findings as conclusive, whether or not the facts in any case before us clearly and satisfactorily establish and constitute the contempt.

Does the evidence sustain the judgment against Andreano, the instant petitioner? It is undisputed that, on March 6, 1925, he was permanently enjoined from keeping for sale, selling, and otherwise trafficking in intoxicating liquor. As a witness, he denied *in toto* the act charged on which the contempt is based. The material evidence is contained in the testimony of two police officers (Davis and Crawford), who made the arrest at the time in question. Davis testified:

"Officer Crawford and I saw Andreano's car on the evening of December 30, 1925, in an alley back of 1210 High Street, Des Moines, and at 9:30 we saw a Red Top cab pull into the alley. We saw Sam walk out of the rear of 1210 High Street to the cab. There was a man in the cab, besides the driver, and we rushed up there and searched the three of them. Andreano showed considerable reluctance about being searched. He backed up against the wire fence, an inclosure used for parking cars, and put up some objections. He said: 'I haven't got anything, boys. You can see that I haven't anything.' I slapped on his pockets. I saw that he had nothing in his pockets, and asked him to step away from the fence. When he objected to doing it, I reached over and pulled him away from the fence, and a gallon can of alcohol dropped from the back of his sheepskin coat. Up to that time, he had held his hands in his side pockets of his sheepskin coat, and kept pulling it tightly about the hips. As I pulled him away from the fence, I pulled his hand out of the left-hand side of the coat, and the gallon of alcohol dropped to the ground from the sheepskin."

Officer Crawford testified:

"When we got up to the cab, Andreano was standing beside it. The taxi driver was sitting in the seat, and another man in

the rear end. Sam was standing with his hands in his pockets, and I felt him over the hands and his coat. I didn't find anything. I told Sam to stand away to one side, and asked Davis to watch him while I searched the taxi. I heard something, so looked around, and Andreano was standing with his back to the east, beside a little fence, and Davis was standing beside him, and there was a gallon can lying on the ground beside him. He had on a sheepskin coat, about three-quarter length. I smelt the contents of the can, and it contained alcohol. Davis picked up the can, and I finished searching the taxi, and found nothing there.''

The night was fairly dark, and there were no lights in the alley. The can of alcohol was ''about three or three and one-half inches thick by about eight or ten inches high, and six inches across. It had a newspaper around it, but when it dropped, the newspaper blew away from the can.'' Upon analysis by the city chemist, the contents of the can showed 87 per cent alcohol by volume and 82 per cent by weight.

The primary claim of the petitioner is that it was physically impossible for the gallon can of alcohol to have been hidden under the coat of the petitioner without being observed by the arresting officers, and that it is just as reasonable to find and determine that the can was thrown from the taxicab by one of the occupants therein, who were some 15 or 20 feet from the place where the can dropped.

Without further comment, we announce the conclusion that the trial court was justified, under the evidence, in finding the petitioner guilty of contempt. We cannot permit a purely speculative theory or a mere probability to outweigh the positive testimony of unimpeached witnesses. Under the circumstances, the fact that a hasty search by the officers did not lead to the discovery of the can does not explain or answer the question herein presented.

The judgment entered is affirmed and the writ annulled.— *Writ annulled.*

EVANS, ALBERT, and MORLING, JJ., concur.