DAVID P. REYNOLDS, PLAINTIFF v. CYNTHIA W. REYNOLDS, (NOW FLYNN), DEFENDANT

CYNTHIA FLYNN (FORMERLY REYNOLDS), PLAINTIFF v. DAVID P. REYNOLDS, DEFENDANT

No. COA00-383

(Filed 18 December 2001)

## 1. Contempt— slow payment of child support—suspended jail sentence—civil rather than criminal

A contempt order arising from a child custody and support action was civil rather than criminal where the trial court imposed a thirty-day active jail sentence "suspended" upon the posting of a cash bond, the payment of interest, the payment of attorney's fees, and the timely payment of future child support due under prior orders. The contempt is civil if the relief is imprisonment conditioned on the performance of certain acts such that the contemnor may avoid or terminate imprisonment by performing these acts, and criminal if the relief is imprisonment limited to a definite time without the possibility of avoidance by performance of a required act or if the relief is imprisonment suspended for a term of probation, with one of the conditions being the performance of certain acts.

## 2. Contempt— civil—compliance with prior orders before hearing—authority of court

A trial court was without authority to adjudicate a child support defendant in civil contempt where defendant fully complied with the court's previous orders between the time he was served with a show cause notice and the hearing. A trial court does not have the authority to impose civil contempt after an individual has complied with a court order, even if the compliance occurs after the show cause notice. However, this does not preclude an adjudication of criminal contempt.

## 3. Child Support, Custody, and Visitation— attorney fees— findings

The trial court did not err by ordering a contempt defendant to pay plaintiff's attorney fees in the underlying child custody and support action where the initial action encompassed custody and support, rather than support only, so that the court was not required to find that defendant had refused to provide adequate child support; the court determined that the fee was reasonable

REYNOLDS v. REYNOLDS

[147 N.C. App. 566 (2001)]

and appropriate; and the court found that plaintiff was an interested party acting in good faith who did not have sufficient funds to employ counsel.

**4. Contempt— civil—failed action—attorney fees**

An award of attorney fees was proper in a failed contempt action arising from the slow payment of child support where the contempt failed due to defendant's compliance with previous court orders after the show cause notice was issued and before the contempt hearing.

Judge JOHN dissenting in part and concurring in part.

Appeal by plaintiff/defendant David P. Reynolds from order filed 30 August 1999 by Judge William G. Jones in Mecklenburg County District Court. Heard in the Court of Appeals 30 January 2001.

*James, McElroy & Diehl, P.A., by William K. Diehl, Jr., for plaintiff-appellee Cynthia Flynn.*

*Helms, Cannon, Henderson & Porter, P.A., by Thomas R. Cannon and Christian R. Troy, for defendant-appellant David P. Reynolds.*

GREENE, Judge.

David P. Reynolds (Defendant) appeals an order filed 30 August 1999 (the 30 August 1999 Order) in favor of Cynthia Flynn (Plaintiff) adjudicating Defendant in criminal contempt and ordering him to pay Plaintiff's attorney's fees in the sum of $65,000.00.

Plaintiff and Defendant were married on 2 July 1983. One child, Audrey Louise Reynolds (Audrey), was born of Plaintiff's and Defendant's marriage on 20 January 1984. The parties subsequently separated on 6 May 1991 and divorced on 2 November 1992. On 1 October 1992, the parties entered into a binding Separation Agreement and Property Settlement (the Agreement). The Agreement provided that Defendant was to pay Plaintiff $2,000.00 per month "for the partial maintenance of [Audrey] to be paid on the first day of each month." In addition, pursuant to the Agreement, the parties were to "have joint custody of [Audrey]." Audrey, however, would "reside primarily with [Plaintiff], subject to reasonable visitation by [Defendant]" as provided in the Agreement.

Plaintiff filed an action on 25 October 1993 against Defendant seeking specific performance of the Agreement and damages for

Defendant's breach of the Agreement due to his failure to: abide by a visitation schedule; give Plaintiff reasonable notice of his visitation; and pay the $2,000.00 per month in child support. An order was entered on 28 April 1994 ordering Defendant to immediately deliver to Plaintiff the sum of $6,000.00 to bring current his child support arrears and "in the future, to make his child support payments on time, directly to [Plaintiff]." The trial court filed a second order on 3 May 1994, with the consent of the parties, directing Defendant to pay Plaintiff the cash sum of $2,000.00 per month for the support of Audrey. On 5 May 1999, the trial court filed a consent order from a 17 February 1998 hearing resolving pending claims for specific performance, custody, visitation, child support, and Plaintiff's contempt motion of 7 October 1997. This order awarded legal custody of Audrey to Plaintiff, as well as provided a visitation schedule for Defendant, and directed Defendant to: bring current all obligations for child support through the month of April 1999; maintain medical insurance for the benefit of Audrey and pay uninsured medical, dental, and drug bills incurred on behalf of Audrey; and "if a contempt citation [was] successfully brought by either party against the other, the losing party [would] be required to pay the reasonable counsel fees of the prevailing party."

After the entry of the trial court's orders, Defendant remained consistently delinquent in his payments of child support to Plaintiff. On 5 April 1999, Plaintiff filed a motion for contempt alleging Defendant: was four months delinquent in his child support payments; had failed to provide medical insurance coverage for Audrey; had failed to pay uninsured medical, dental, and drug expenses incurred by Audrey; had the ability to comply with all orders entered; had full knowledge and understanding of the requirements of the orders; and had refused and continued to refuse to comply with the terms of the order. After Plaintiff filed the motion for contempt for non-payment of child support, Defendant paid the cash child support arrearages due through April 1999.

On 30 August 1999, the trial court found, in pertinent part, that:

16. [Defendant] offered no legitimate excuse for his non-payment of cash child support on repeated occasions from 1993 through 1999.

17. [Defendant] has stipulated that he has the financial capability of making an attorney['s] fee and court cost payment as may

REYNOLDS v. REYNOLDS

[147 N.C. App. 566 (2001)]

be ordered by this [c]ourt without the necessity of the [c]ourt examining economic data related to [Defendant].

18. [Defendant] has liquid assets approaching $1 million as of the date of this hearing, in addition to his real estate holdings, automobiles, and tangible property.

19. [Defendant's] failure to comply with the terms of the [o]rders is willful and deliberate.

20. At all times since entry of the [o]rders, [Defendant] has had the ability to comply with the [o]rders.

21. [Defendant] has at all times been fully aware of the [o]rders entered by this [c]ourt and has had full knowledge and understanding of the requirements of the [o]rders.

22. Beginning in October of 1993 and continuing into April of 1999, [Defendant] has refused, repeatedly, to comply with the terms of the [c]ourt [o]rders related to cash child support. . . .

. . . .

25. There has never been a question about [Defendant's] ability to pay; he has simply not paid from time to time as a means of punishing and/or harassing [Plaintiff].

. . . .

32. William K. Diehl, Jr. [(Diehl)] . . . has represented [Plaintiff] throughout these proceedings.

. . . .

34. Beginning in 1993, when [Defendant] stopped complying with [the Agreement] to pay child support through June 17, 1999, [Diehl's] firm has submitted billings to [Plaintiff] in the total amount of $71,782.50 representing time expenditures by [Diehl] of 126.4 hours; 132 hours by his associate Katherine Line Kelly; and 96 hours by paralegals. Furthermore, the firm advanced costs totaling $2,601.25.

. . . .

36. [Diehl] is an experienced lawyer, having practiced for thirty years. He is an expensive lawyer, charging $500.00 per hour for his time. His associate . . . billed between $90.00 and $150.00 per hour. Paralegal time was billed at $75.00 to $85.00 per hour.

The [c]ourt finds the hourly rates charged by [Diehl], his associate and the paralegals are reasonable, and consistent with charges made by lawyers of comparable skill and ability in this community.

37. [Defendant's attorney], like [Diehl], is an experienced practitioner and has appeared before this [c]ourt on many occasions. [Plaintiff] is entitled to have counsel of the caliber of [Diehl], to meet [Defendant] and his attorney on an equal footing.

38. The value of [Diehl's] service [is] no less than $65,000.00.

. . .

39. The [c]ourt obtained from counsel for [Plaintiff and Defendant] a stipulation that of the $65,000.00 award, $10,000.00 represents time related to the contempt portion of this case and the remaining $55,000.00 to other issues (custody and visitation).

The trial court then concluded:

2. Past willful disobedience of a court [o]rder for child support is punishable as criminal contempt.

3. Beginning in 1993, and continuing through the first four months of 1999, [Defendant] has repeatedly violated court [o]rders entered in this case requiring him to timely pay cash child support.

4. At the times [Defendant] has not paid cash child support, he has had the ability to make the payments, but has chosen, intentionally, not to do so as a form of harassment and punishment directed to [Plaintiff].

5. [Defendant] did not make child support payments due on the 1st of January, February and March of 1999 and the 1st of July 1998.

6. [Defendant] offered no legal excuse for his non-payment and there is none.

7. After [Plaintiff] filed her most recent Motion for Contempt, [Defendant] made the cash child support arrearage payments. These payments eliminate the option of finding [Defendant] in civil contempt of court, but do not excuse his criminal contempt.

**REYNOLDS v. REYNOLDS**

[147 N.C. App. 566 (2001)]

8. [Defendant] is guilty beyond a reasonable doubt of criminal contempt of the [o]rders of this [c]ourt requiring him to timely make cash child support payments.

9. Interest is due . . . from the due date of each $2,000.00 per month child support payment and interest arrearages with regard to payments due July 1, 1998, January 1, 1999, February 1, 1999, March 1, 1999, until the date of payment total $212.50 and [Plaintiff] is entitled to a judgment against [Defendant] in that amount.

10. [Plaintiff] does not have sufficient funds with which to employ and pay counsel with regard to the handling of this case commencing in 1993 and continuing through the contempt hearing in July of 1999.

. . . .

13. [Plaintiff] is an interested party who has acted in good faith in bringing this action and in prosecuting the Motion for Contempt.

14. Counsel for [Plaintiff] has acted skillfully and considering the work performed, the nature of the task imposed, the result obtained, a total charge of $65,000.00 to be paid by [Defendant] to [Diehl] and his firm is, in all respects, reasonable and appropriate.

15. [Defendant] has the ability to immediately make the attorney['s] fee award as required by this [o]rder.

16. By stipulation, the parties agree that $55,000.00 of the award relates to the handling of the custody, child support aspects of the case and $10,000.00 to the Motion to hold [Defendant] in contempt of [c]ourt.

17. [Defendant's] conduct requires the [c]ourt to impose security to ensure that in the future cash child support payments are paid in a timely fashion.

The trial court then adjudged Defendant guilty of criminal contempt and ordered an active sentence of thirty days in the Mecklenburg County Jail suspended on the following conditions: Defendant's posting of a cash bond or security of at least $75,000.00 to secure and assure the timely payment of future cash child support; Defendant immediately paying Plaintiff's attorney the sum of $212.52, "representing interest on the four delinquent child support payments";

Defendant timely paying each cash child support amount due; and Defendant immediately paying $10,000.00 in attorney's fees. The 30 August 1999 Order also ordered Defendant to pay to Diehl and his firm "the sum of $55,000.00[,] representing legal services rendered to [Plaintiff] for the custody/child support aspects of this proceeding and not including time related to [Defendant's] contempt."

The issues are whether: (I) the 30 August 1999 Order of contempt is civil or criminal; (II) Defendant can be found in civil contempt although he had paid the child support arrearages due under previous orders of the court prior to the court hearing on contempt; and (III) (A) the trial court's award of attorney's fees for the underlying child custody and support action was supported by the findings of fact; and (B) the trial court's award of attorney's fees in the contempt action was proper.

I

*Civil or Criminal Contempt*

[1] Whether an order constitutes criminal or civil contempt depends on the "character of the [actual] relief" ordered by the trial court, not on the classification selected by the trial court. *Bishop v. Bishop*, 90 N.C. App. 499, 505, 369 S.E.2d 106, 109 (1988). If the relief is imprisonment and the imprisonment is conditioned on the contemnor's performance of certain acts required by the court such that the contemnor "may avoid or terminate his imprisonment by performing" these acts, the contempt is civil in nature. *Id.* If the relief is imprisonment and the imprisonment is "limited to a definite period of time without possibility of avoidance by the contemnor's performance of an act required by the court," the contempt is criminal in nature. *Id.* A contempt is also criminal in nature if the relief is imprisonment and the imprisonment is suspended for a term of probation, supervised or unsupervised,[1] and *one* of the conditions of the suspended sentence (probation) requires the performance of certain acts by the contemnor to comply with the prior orders of the court. *Id.* at 506, 369 S.E.2d at 110. This is so because a determinate term of probation places the contemnor "under numerous disabilities that he cannot escape by [simply] complying with the dictates of the prior [court] orders." *Hicks v. Feiock*, 485 U.S. 624, 639 n.11, 99 L. Ed. 2d 721, 736 n.11 (1988). Those disabilities could include, for example, the require-

_____

1. "The court may place a person on supervised or unsupervised probation." N.C.G.S. § 15A-1341(b) (1999).

ment that the contemnor "[c]ommit no criminal offense," N.C.G.S. § 15A-1343(b)(1) (1999), and/or "[r]emain gainfully and suitably employed," N.C.G.S. § 15A-1343(b)(7) (1999).

In this case, the trial court ordered the imposition of a thirty-day sentence "suspended" on the following conditions: the posting of a $75,000.00 cash bond or security; the payment of interest of $212.52; the payment of $10,000.00 in attorney's fees; and the timely payment of each future child support amount due under the trial court's prior orders. The trial court did not order Defendant be placed on probation or placed under any "disabilities." This order, therefore, constitutes civil contempt because Defendant was permitted to avoid the thirty-day imprisonment upon the performance of four delineated acts.

## II

### Civil Contempt

[2] A trial court may impose criminal contempt, N.C.G.S. § 5A-11(a)(3) (1999), or civil contempt, N.C.G.S. § 5A-21(b) (1999), if an individual willfully disobeys a court order. A trial court, however, does not have the authority to impose civil contempt after an individual has complied with a court order, even if the compliance occurs after the party is served with a motion to show cause why he should not be held in contempt of court. *Hudson v. Hudson*, 31 N.C. App. 547, 551, 230 S.E.2d 188, 190 (1976). Compliance after a party is served with a motion to show cause why he should not be held in contempt of court does not, however, preclude an adjudication of criminal contempt. *See* W. Gregory Rhodes, Note, *The Distinction Between Civil and Criminal Contempt in North Carolina*, 67 N.C. L. Rev. 1281, 1290 n.87 (1988); *see, e.g., Hudson*, 31 N.C. App. at 551, 230 S.E.2d at 189-90.

In this case, Defendant was in noncompliance with the previous orders of the trial court at the time he was served with a notice to appear at a contempt hearing. At some point prior to the hearing he fully complied with the previous orders, so that at the time of the contempt hearing, he was not in violation of any court order. Accordingly, the trial court was without authority to adjudicate Defendant in civil contempt of court and the order of contempt must be vacated.[2] *See*

2. As the trial court was without authority to adjudicate Defendant in civil contempt of court, it does not follow the contempt is criminal in nature. The contempt is criminal only if it qualifies as such under the teachings of *Bishop*, and in this case, as discussed in part I of this opinion, it does not.

*Hudson,* 31 N.C. App. at 551, 230 S.E.2d at 190. Therefore, all of the conditions for Defendant purging himself of civil contempt must fail, except the order to post a cash bond or security in the amount of $75,000.00, *see Parker v. Parker,* 13 N.C. App. 616, 617-18, 186 S.E.2d 607, 608 (1972); *see also* N.C.G.S. § 50-13.4(f)(1) (1999), and the $10,000.00 award of attorney's fees in the contempt action as discussed in part III(B) of this opinion.

### III

### *Attorney's Fees*

### A

### *Custody and Support*

**[3]** Defendant next assigns error to the trial court requiring him to pay Plaintiff's attorney's fees in the underlying custody and support action on the grounds (1) there is no finding by the trial court he "failed to provide adequate support" and (2) there is no finding by the trial court that the fees are reasonable.[3] We disagree.

Prior to an award of attorney's fees in an action for custody or in an action for custody and support, the trial court must find the interested party was acting in good faith and had "insufficient means to defray the expense of the suit." *Lawrence v. Tise,* 107 N.C. App. 140, 153, 419 S.E.2d 176, 184 (1992); N.C.G.S. § 50-13.6 (1999). Additionally, the trial court must make a finding of "reasonableness" regarding "the nature and scope of the legal services rendered and the skill and time required." *Warner v. Latimer,* 68 N.C. App. 170, 176, 314 S.E.2d 789, 793 (1984). The trial court is not required to make the additional finding that " 'the party ordered to furnish support has refused to provide support which is adequate under the circumstances existing at the time of the institution of the action' " unless the action is one for support only. *Lawrence,* 107 N.C. App. at 153, 419 S.E.2d at 184 (citation omitted); N.C.G.S. § 50-13.6.

In this case, the initial action was one encompassing custody and support. Therefore, the trial court was not required to make a finding

---

3. Defendant also argues in his brief to this Court that the trial court had no authority to "make payment [of the $55,000.00 attorney's fees] a condition of [Defendant] purging himself of contempt." Our review of the trial court's order, however, does not reveal the trial court imposed the payment of the $55,000.00 in attorney's fees as a condition on Defendant's release, rather that the payment of attorney's fees for the underlying child custody and support action was separate and distinct from the contempt issue.

that Defendant had refused to provide adequate child support for Audrey. The trial court determined the fee award was "reasonable and appropriate" and there are numerous findings supporting that determination relating to the skill and expertise of Plaintiff's counsel and Plaintiff's entitlement "to have counsel of the caliber of [Diehl] to meet [Defendant] and his attorney on an equal footing." Moreover, the trial court found Plaintiff, an interested party, acted in good faith in bringing the action and did not have "sufficient funds with which to employ and pay counsel with regard to the handling of this case commencing in 1993 and continuing through the contempt hearing in July of 1999." Accordingly, the trial court did not err in ordering Defendant to pay Plaintiff's attorney's fees of $55,000.00 in the underlying child custody and support action.

## B

### *Contempt*

**[4]** As a general rule, attorney's fees in a civil contempt action are not available unless the moving party prevails. *Smith v. Smith*, 121 N.C. App. 334, 339, 465 S.E.2d 52, 55 (1996). Nonetheless, in the limited situation where contempt fails because the alleged contemnor complies with the previous orders after the motion to show cause is issued and prior to the contempt hearing, an award of attorney's fees is proper. *Hudson*, 31 N.C. App. at 552, 230 S.E.2d at 190. In either event, an award for attorney's fees is only proper upon a finding by the trial court that: (1) the interested party was acting in good faith, *Lawrence*, 107 N.C. App. at 153, 419 S.E.2d at 184; (2) the interested party had insufficient means to defray the expense of that suit, *id.*; and (3) the attorney's fees were reasonable, *Warner*, 68 N.C. App. at 176, 314 S.E.2d at 793.

In this case, the reason the contempt failed is because Defendant complied with the previous court orders after the notice to show cause was issued and prior to the contempt hearing. The trial court did, however, make findings that: (1) Plaintiff was acting in good faith; (2) Plaintiff had insufficient means to defray the expense of the suit; and (3) the attorney's fees were reasonable. Accordingly, the trial court's award for attorney's fees in the contempt action was proper.

In summary, the order of contempt entered by the trial court is one for civil contempt and is vacated. The order of attorney's fees in the underlying child custody and support action and in the contempt

action is affirmed, as well as the order for Defendant to post a cash bond or security.

Vacated in part, and affirmed in part.

Judge TYSON concurs.

Judge JOHN concurs in part and dissents in part with a separate opinion.

JOHN, J., dissenting in part; concurring in part.

Plaintiff Cynthia Reynolds Flynn (plaintiff) contends, *inter alia*, that defendant David P. Reynolds's (defendant) "appeal is not within the jurisdiction of this Court and should be dismissed." As to defendant's appeal of that part of the trial court's order adjudicating him in contempt, I agree and vote to dismiss said appeal. Therefore, I respectfully dissent from those portions of the majority opinion treating the court's adjudication as civil, as opposed to criminal, contempt. However, defendant's appeal of the trial court's discrete award of $55.000.00 as counsel fees "in the underlying custody and support action" appears to be properly before this Court, and I concur in the portion of the majority opinion affirming that award.

District court orders adjudicating criminal contempt are appealable to the superior court, not the Court of Appeals, *see* N.C.G.S. § 5A-17 (1999) ("appeal from a finding of [criminal] contempt by a judicial official inferior to a superior court judge is by hearing *de novo* before a superior court judge"), which lacks jurisdiction to entertain the appeal, *see Michael v. Michael*, 77 N.C. App. 841, 843, 336 S.E.2d 414, 415 (1985), *cert. denied*, 316 N.C. 195, 341 S.E.2d 577 (1986) (G.S. § 5A-17 "vests exclusive jurisdiction in the superior court to hear appeals from [district court] orders holding a person in criminal contempt"). However, appeals in district court civil contempt matters are directly to this Court. *See* N.C.G.S. § 5A-24 (1999)("[a] person found in civil contempt may appeal in the manner provided for appeals in civil actions").

The distinction between criminal and civil contempt has been characterized by our Supreme Court as "hazy at best." *O'Briant v. O'Briant*, 313 N.C. 432, 434, 329 S.E.2d 370, 372 (1986). Another court observed that contempt proceedings "occup[y] what may be termed the twilight zone between civil and criminal cases." *Andreano v.*

*Utterback*, 202 Iowa 570, 571, 210 N.W. 780, 780 (1926). The disagreement of the panel regarding the present case indicates it is no exception.

Our Supreme Court has observed that

[a] major factor in determining whether contempt is criminal or civil is the purpose for which the power is exercised.

*O'Briant*, 313 N.C. at 434, 329 S.E.2d at 372. Therefore,

criminal contempt is administered as punishment for acts already committed that have impeded the administration of justice in some way. . . . Civil contempt, on the other hand, is employed to coerce disobedient defendant into complying with orders of [the] court. . . .

*Brower v. Brower*, 70 N.C. App. 131, 133, 318 S.E.2d 542, 544 (1984).

Accordingly, civil contempt is not a form of punishment, *Jolly v. Jolly*, 300 N.C. 83, 92, 265 S.E.2d 135, 142 (1980), *overruled on other grounds by McBride v. McBride*, 334 N.C. 124, 431 S.E.2d 14 (1993); rather its purpose is remedial, *i.e.,* "to coerce a defendant into compliance" with the court's order, *McMiller v. McMiller*, 77 N.C. App. 808, 809, 336 S.E.2d 134, 135 (1985). Civil contempt thus is "a civil remedy to be utilized exclusively to enforce compliance with court orders," *Jolly*, 300 N.C. at 92, 265 S.E.2d at 142, and the contemnor may terminate the penalty imposed "and discharge himself at any moment by doing what he had previously refused to do," *Gompers v. Buck's Stove and Range Co.*, 221 U.S. 418, 442, 55 L. Ed. 797, 806 (1911); *see also* N.C.G.S. § 5A-21(b) (1999) ("person found in civil contempt may be imprisoned as long as the civil contempt continues"). Criminal contempt, however, is punitive in purpose and the contemnor "cannot undo or remedy what has been done," *Gompers*, 221 U.S. at 442, 55 L. Ed. at 806, nor "shorten the term by promising not to repeat the offense," *id.*

Moreover, as acknowledged by the majority, although

specifically conditioning the imposition or effect of the probationary or suspended sentence upon the contemnor's *purging* himself would constitute civil relief,

*Bishop v. Bishop*, 90 N.C. App. 505, 506, 369 S.E.2d 106, 110 (1988) (emphasis added), a determinate suspended sentence, notwithstanding that it is accompanied by conditions, comprises criminal punish-

ment and is "not equivalent to a conditional sentence that would allow the contemnor to avoid or purge . . . sanctions," *Hicks ex. rel. Feiock v. Feiock*, 485 U.S. 624, 639 n.11, 99 L. Ed. 2d 712, 736 n.11 (1988); *see also id.* at 637, 99 L. Ed. 2d at 735 ("many convicted criminals [receive a suspended sentence and are placed on probation] for the purpose (among others) of influencing their behavior. [Yet,] . . . as long as [the criminal] meets the conditions of his informal probation, he will never enter the jail. Nonetheless, if the sentence is a determinate one, then the punishment is criminal in nature . . . .").

Finally,

[i]n contempt cases, both civil and criminal relief have aspects that can be seen as either remedial or punitive or both: when a court imposes fines and punishments upon a contemnor, it is not only vindicating its legal authority to enter the initial court order, but it also is seeking to give effect to the law's purpose of modifying the contemnor's behavior to conform to the terms required in the order.

*Id.* at 635, 99 L. Ed. 2d at 734 (quoting *Gompers*, 221 U.S. at 443, 555 L.Ed. at 806).

Turning to the trial court's order at issue in light of the foregoing authorities, I initially deem it significant that the court imposed a determinate thirty-day term, *see id.* at 637, 99 L. Ed. 2d at 735, and suspended that sentence upon conditions, *see id.* at 639 n. ll, 99 L. Ed. 2d at 736 n.11, as opposed to ordering an indefinite period of incarceration terminated upon defendant's compliance with the court's previous orders, *i.e.*, allowing defendant, like the defendant in *Bishop*, *see* 90 N.C. App. at 506, 369 S.E.2d at 110, to "purge" himself by performance of certain acts such as payment of the arrearage, *see id.*, an act accomplished herein by defendant in advance of the contempt adjudication.

The distinction is critical. Upon a contemnor's "purging" himself of contempt, the contempt judgment is "lifted," *Jolly*, 300 N.C. at 92, 265 S.E.2d at 142, or terminated. However, compliance with a suspended sentence simply ensures evasion of incarceration, but neither "lifts" nor terminates the sentence. *See id.* at 93, 265 S.E.2d at 143 (revocation of suspended sentence "generally spells commencement or resumption of a determinative, punitive sentence"); *see also Bishop*, 90 N.C. App. at 505, 369 S.E.2d at 109 (imprisonment for contempt "is punitive and thus criminal if the sentence is limited to a definite period of time without possibility of avoidance by contemnor's

performance of an act required by the court"). Thus defendant herein may not "shorten the term," *Gompers*, 221 U.S. at 442, 55 L. Ed. at 806, of the suspended sentence by compliance with its terms, but may merely evade revocation thereof, *see Jolly*, 300 N.C. at 93, 265 S.E.2d at 143.

Next, it is pertinent that the trial court characterized defendant's behavior as criminal contempt, *see Watkins v. Watkins*, 136 N.C. App. 844, 846, 526 S.E.2d 485, 486 (2000) (trial courts "urge[d] to identify whether contempt proceedings are in the nature of criminal contempt . . . or civil contempt"), concluded that defendant was "guilty beyond a reasonable doubt of criminal contempt," *see* N.C.G.S. § 5A-15 (f) (1999) (in criminal contempt proceeding, "[t]he facts must be established beyond a reasonable doubt"), and acknowledged it was unable to hold defendant in civil contempt by virtue of his pre-hearing compliance with prior support orders, *see Jolly*, 300 N.C. at 92, 265 S.E.2d at 142 (civil contempt order "lifted as soon as [the contemnor] decides to comply with the order of the court").

Moreover, the order at issue and the transcript of the proceedings herein reflect the trial court's clear and significant frustration with Reynolds' repeated past acts of wilful nonpayment causing multiple hearings which were unnecessary, time consuming (the instant record comprises one hundred eighty-four pages in addition to a transcript of one-hundred eighty-six pages, a one hundred twenty-five page deposition, and seventy-one exhibits), and without doubt impeded the administration of justice. *See O'Briant*, 313 N.C. at 434-35, 329 S.E.2d at 372 ("[c]riminal contempt is . . . where the judgment is in punishment of an act already accomplished, tending to interfere with the administration of justice," and "[i]t is clear that the purpose of the contempt judgments [at issue] was to punish [] disobedience of the court's orders . . . , acts or omissions already accomplished which tended to interfere with the administration of justice"), and N.C.G.S. § 5A-1(a)(3) (1999) (criminal contempt is "wilful disobedience of, [or] resistance to . . . a court's lawful process, [or] order . . .").

For example, the court noted in its order that Reynolds "offered no legitimate excuse for his non-payment of cash child support on repeated occasions from 1993 through 1999," that he had "at all times" since the entry of the court's respective orders "the ability to comply with th[ose] orders," including "liquid assets approaching $1 million as of the date of th[e] hearing" in addition to real and personal property holdings, that his conduct "ha[d] been contemptuous," and that

he had failed to pay from time to time simply "as a means of punishing and/or harassing Flynn."

In addition, in the course of entering its judgment, the court addressed certain comments to Reynolds directly, including the following:

> . . . your conduct has been particularly egregious. I see a lot of people who don't pay child support, often for no good reason, but never before have I seen someone who had the ability to pay so easily and was so consistently—and I think consistently is the word—delinquent, and deliberately delinquent for an ulterior reason.

Moreover, I read the trial court's imposition of the maximum statutory term for criminal contempt, *see* N.C.G.S. § 5A-12(a) (1999) ("a person who commits criminal contempt . . . is subject to . . . imprisonment up to 30 days"), *cf.* N.C.G.S. § 5A-21(b)(b1)(b2) (1999) ("total" period of imprisonment for civil contempt "shall not exceed 12 months"), albeit suspended, *see Hicks*, 485 U.S. at 639 n.11, 99 L. Ed.2d at 736 n. 11 . . . , as signaling the court's punitive as opposed to remedial intent.

Turning to the conditions imposed upon the trial court's suspension of its thirty day sentence, both the assessment of counsel fees in the amount of $10,000.00 and of interest upon defendant's four delinquent child support payments in particular appear to be directed at and in punishment of defendant's past failure to pay child support, *see O'Briant*, 313 N.C. at 434, 329 S.E.2d at 372, and *Mauney v. Mauney*, 268 N.C. 254, 256, 150 S.E.2d 391, 393 (1966) (quoting *Dyer v. Dyer*, 213 N.C. 634, 635, 197 S.E. 157 (1938) ("criminal contempt is . . . where the judgment is in punishment of an act already accomplished, tending to interfere with the administration of justice"). Regarding counsel fees, moreover, the parties had previously agreed in the 5 May 1999 consent order that

> if a contempt citation is successfully brought by either party against the other, the losing party shall be required to pay the reasonable counsel fees of the prevailing party.

*See PCI Energy Services v. Wachs Technical Services*, 122 N.C. App. 436, 442, 470 S.E.2d 565, 568 (1996) (counsel fees properly awarded in contempt proceeding where earlier consent judgment "contained an express provision" allowing recovery of costs associated with enforcing the judgment).

Contrary to the majority's assertion, moreover, the requirements that defendant post and maintain a cash bond as well as make each child support payment when due constitute enduring "disabilities that he cannot escape," *Hicks*, 485 U.S. at 639 n.11, 99 L. Ed. 2d at 736 n.11, *i.e.*, conditions which remain imposed upon defendant in consequence of the trial court's suspended sentence. Indeed, citing *Bishop*, 99 N.C. App. at 506, 369 S.E.2d at 110, the majority correctly states that "[a] contempt is [] criminal in nature if the relief is imprisonment and the imprisonment is suspended . . . , and *one* (emphasis in majority opinion) of the conditions of the suspended sentence [] requires the . . . contemnor to comply with the prior orders of the court" during the suspended sentence. To the extent that compliance with previous court orders may be deemed "remedial," moreover, "where both civil and criminal relief . . . are imposed," *id.* at 505, 369 S.E.2d at 109, " 'the criminal feature of the order is dominant and fixes its character' " upon the proceeding, *id.* at 505-06, 369 S.E. 2d at 109-10 (citing *Hicks*, 485 U.S. at 638 n. 10, 99 L. Ed.2d at 736 n.10 (in turn quoting *Nye v. United States*, 313 U.S. 33, 42-43, 85 L. Ed. 2d 1172, 1177 (1940))).

In short, I conclude that defendant's appeal of that portion of the trial court's order adjudicating him in criminal contempt is indeed criminal in nature and therefore not within the jurisdiction of this Court, *see Michael*, 77 N.C. App. at 843, 336 S.E.2d at 415, and vote to dismiss said appeal. However, defendant's appeal of that separate portion of the trial court's order awarding plaintiff $55,000.00 as counsel fees in the custody and support action appears to be properly before this Court, and I vote to affirm said award.