Plasman v. Decca Furniture (USA), Inc., 2016 NCBC 20.

STATE OF NORTH CAROLINA

CATAWBA COUNTY

CHRISTIAN G. PLASMAN, in his individual capacity and derivatively for the benefit of, on behalf of and right of nominal party BOLIER & COMPANY, LLC,

Plaintiff,

v.

DECCA FURNITURE (USA), INC., DECCA CONTRACT FURNITURE, LLC, RICHARD HERBST, WAI THENG TIN, TSANG C. HUNG, DECCA FURNITURE, LTD., DECCA HOSPITALITY FURNISHINGS, LLC, DONGGUAN DECCA FURNITURE CO. LTD., DARREN HUDGINS, DECCA HOME, LLC, and ELAN BY DECCA, LLC,

Defendants,

and BOLIER & COMPANY, LLC,

Nominal Defendant,

v.

CHRISTIAN J. PLASMAN a/k/a BARRETT PLASMAN,

Third-Party Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 2832

**CIVIL CONTEMPT ORDER**
(REDACTED VERSION)

{1}     **THIS MATTER** is before the Court upon its Show Cause Order and Notice of Hearing ("Show Cause Order"), issued January 5, 2016 in the above-captioned case, requiring Plaintiff Christian G. Plasman ("Chris Plasman") and Third-Party Defendant Christian J. Plasman a/k/a Barrett Plasman ("Barrett Plasman") (collectively, the "Plasmans") to show cause why they should not be held in civil contempt for failing to comply with the Court's May 26, 2015 Order and Opinion ("May 26 Order").  The Court issued the Show Cause Order after receiving briefing

and hearing argument on Defendant Decca Furniture (USA), Inc.'s ("Defendant" or "Decca USA") Motion for Contempt of Court for Failing to Comply with Court Order and Motion for Sanctions ("Motion for Contempt").

{2} The Court, having considered the Motion for Contempt, the briefs, evidentiary submissions of counsel, appropriate matters of record, and the arguments of counsel hereby **FINDS** and **CONCLUDES** as follows.

*Law Offices of Matthew K. Rogers, PLLC, by Matthew K. Rogers, for Plaintiff Christian G. Plasman and Third-Party Defendant Christian J. Plasman a/k/a Barrett Plasman.*

*McGuireWoods LLP, by Robert A. Muckenfuss, Elizabeth Zwickert Timmermans, Andrew D. Atkins, and Jodie H. Lawson, for Defendants Decca Furniture (USA), Inc., Decca Contract Furniture, LLC, Richard Herbst, Wai Theng Tin, Tsang C. Hung, Decca Furniture, Ltd., Decca Hospitality Furnishings, LLC, Dongguan Decca Furniture Co. Ltd., Darren Hudgins, Decca Home, LLC, Elan by Decca, LLC, and Nominal Defendant Bolier & Company, LLC.*

Bledsoe, Judge.

I.

PROCEDURAL BACKGROUND

{3} Decca USA filed the Motion for Contempt on September 22, 2015. Defendant's Motion moved the Court to hold the Plasmans in civil contempt for their allegedly willful failure to comply with this Court's May 26 Order. The May 26 Order, among other things, granted Defendant's motion to enforce a preliminary injunction ("P.I. Order") entered by Judge Richard Voorhees of the United States District Court for the Western District of North Carolina ("Federal Court") by ordering the Plasmans to comply with the Federal Court's order to return diverted funds to Defendant.

{4} The Court held a hearing on the Motion for Contempt on December 17, 2015. The Court, finding probable cause that the Plasmans are in willful violation of the May 26 Order, issued the Show Cause Order on January 5, 2016. The Court deferred ruling on the other matters in Decca USA's Motion for Contempt, specifically their request for attorney's fees.

{5}     In the Show Cause Order, the Court ordered the Plasmans to produce for *in camera* review certain financial information of the Plasmans (the "Financial Submissions") relevant to the Court's assessment of the Plasmans' present ability to comply with the May 26 Order.  The Plasmans initially objected and failed to produce the requested materials.  (Order on Pl.'s and Third Party Def.'s Obj. to Show Cause 3.)  The Court again ordered the Plasmans to submit the Financial Submissions, and, in light of their objections, noted that the Plasmans could file a motion seeking appropriate relief if they had concerns about the disclosure of the Plasmans' personal financial information.  (Order on Pl.'s and Third Party Def.'s Obj. to Show Cause 4–5.)

{6}     In response, the Plasmans submitted the Financial Submissions and filed a Motion for Protective Order ("Motion for Protective Order"), which moved the Court to issue a protective order barring disclosure of the Financial Submissions to Defendants and the public at large.  On February 8, 2016, the Plasmans filed a Motion to Stay Enforcement of Appealed Order ("Motion to Stay"), which moved the Court again to stay enforcement of the May 26 Order and the contempt proceedings.

{7}     Decca USA filed a Motion to Review Evidence Submitted in Camera ("Motion to Review Evidence") on February 9, 2016.  This motion had the same effect as a response to the Plasmans' Motion for Protective Order, moving the Court to allow Defendant to review the Financial Submissions so it could argue its position at the hearing noticed in the Show Cause Order (the "Show Cause Hearing" or the "Hearing").  (Def.'s Mot. Review Evidence 4.)  That same day, Defendant filed a Motion for Citation of Criminal Contempt ("Motion for Criminal Contempt"), which alternatively moved the Court to hold the Plasmans in criminal contempt for their failure to comply with the May 26 Order.  (Def.'s Mot. Criminal Contempt ¶ 8.)

{8}     At the Show Cause Hearing held on February 10, 2016, the Court orally denied the Motion to Stay, granted the Motion for Protective Order, and denied the Motion to Review Evidence after deeming it a response to the Motion for Protective

Order.[1]  The Court mentions these motions to preserve their resolution in the case's written record.

{9}   The Plasmans appeared with their counsel at the Show Cause Hearing. Defendant was represented by counsel at the Hearing.

II.

LEGAL STANDARD

{10}   Civil contempt proceedings may be initiated by motion of an aggrieved party, N.C. Gen. Stat. § 5A-23(a1), or by order of a judicial official upon a finding of probable cause, N.C. Gen. Stat. § 5A-23(a).  An aggrieved party bears the burden of proof in a contempt proceeding initiated by its own motion, but a judicial official's entry of a show cause order based on a finding of probable cause shifts the burden of proof to the alleged contemnor to prove that he was not in willful contempt of the court's prior order.  *Trivette v. Trivette*, 162 N.C. App. 55, 60, 590 S.E.2d 298, 303 (2004) (citing *Plott v. Plott*, 74 N.C. App. 82, 85, 327 S.E.2d 273, 275 (1985)).  The Court's entry of the Show Cause Order shifted the burden of proof to the Plasmans here.

{11}   In a civil contempt proceeding, the judicial official is the trier of fact.  N.C. Gen. Stat. § 5A-23(d).  When civil contempt is found, the judicial official must enter an order finding the facts supporting each element of civil contempt and specifying the action by which the contemnor can purge himself or herself of contempt.  N.C. Gen. Stat. § 5A-23(e).

---

[1]  The Court granted the Motion for Protective Order in light of the peculiar circumstances of this case.  Most civil contempt orders requiring a person to pay money arise in the domestic setting where each party's financial resources are directly relevant to the underlying claims, if not already part of the record.  Here, the Plasmans seek to protect their personal financial information from Defendant, their former employer, at an early stage in this litigation.  The Plasmans further seek a protective order on the grounds that the Financial Submissions contain some of their spouses' and childrens' personal financial information, which they contend is not germane to this litigation.  In recognition of the Plasmans' legitimate concerns, and in light of Defendant's concession at the Show Cause Hearing that it would forgo reviewing the Financial Submissions if the Court was inclined to find that the Plasmans possessed the present ability to comply, the Court granted the Motion for Protective Order, and Defendant has not been permitted to review the Financial Submissions.

III.

ANALYSIS

A. <u>Civil Contempt</u>

{12} Our statutes define civil contempt as follows:

(a) Failure to comply with an order of a court is a continuing civil contempt as long as:
(1) The order remains in force;
(2) The purpose of the order may still be served by compliance with the order;
(2a) The noncompliance by the person to whom the order is directed is willful; and
(3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.

N.C. Gen. Stat. § 5A-21(a) (2015).

{13} "Civil contempt is a term applied where the proceeding is had to preserve the rights of private parties and to compel obedience to orders and decrees made for the benefit of such parties." *O'Briant v. O'Briant*, 313 N.C. 432, 434, 329 S.E.2d 370, 372 (1985). In order to compel compliance with the Court's order, the civil contempt statutes authorize imprisonment as long as the civil contempt continues, subject to certain time limitations. N.C. Gen. Stat. § 5A-21(b). A court order holding a person in civil contempt must specify how the contemnor may purge the contempt, and imprisonment cannot continue once the contempt has been purged. N.C. Gen. Stat. §§ 5A-22(a), 23(e). *See also Cox v. Cox*, 133 N.C. App. 221, 226, 515 S.E.2d 61, 65 (1999) (stating that a purge provision must clearly specify what the defendant can and cannot do to purge himself of contempt). Because civil contempt seeks to coerce compliance rather than to punish, the purge provision is essential to a civil contempt order. *Bethea v. McDonald*, 70 N.C. App. 566, 570, 320 S.E.2d 690, 693 (1984) (citing *Jolly v. Wright*, 300 N.C. 83, 265 S.E.2d 135 (1980)).

a. <u>The May 26 Order</u>

{14} The May 26 Order is still in effect and thus remains in force. The May 26 Order directed the Plasmans to repay to Decca USA the diverted funds that were

the subject of the Federal Court's P.I. Order, and this Court has not modified, amended, or otherwise terminated that Order. N.C. Gen. Stat. § 5A-21(a)(1).

{15} The Court further finds that the purpose of the May 26 Order—to enforce the Federal Court P.I. Order's directive that the Plasmans return the diverted funds to Decca USA—may still be served by compliance with the Order. N.C. Gen. Stat. § 5A-21(a)(2); *see also Reynolds v. Reynolds*, 147 N.C. App. 566, 573, 557 S.E.2d 126, 131 (2001) (holding that even belated compliance moots the need for civil contempt).

      b. <u>Willful Noncompliance</u>

{16} An individual's noncompliance with a court order is only subject to civil contempt if it is willful. N.C. Gen. Stat. § 5A-21(a)(2a). Noncompliance with a court order is willful when it involves "either a positive action (a 'purposeful and deliberate act') in violation of a court order or a stubborn refusal to obey a court order (acting with 'knowledge and stubborn resistance')." *Hancock v. Hancock*, 122 N.C. App. 518, 525, 471 S.E.2d 415, 419 (1996). Willfulness "involves more than deliberation or conscious choice; it also imports a bad faith disregard for authority and the law." *Id.* at 523, 471 S.E.2d at 419 (quotation omitted).

{17} The Court finds that the Plasmans' failure to comply with the May 26 Order is willful. In the P.I. Order, the Federal Court first ordered the Plasmans to "return to Decca USA's Bank of America lockbox all of Bolier & Co.'s monies, including but not limited to customer payments, diverted to them . . . ." *Bolier & Co., LLC v. Decca Furniture United States Inc.*, No. 5:12-cv-00160-RLV-DSC, 2013 U.S. Dist. LEXIS 26791, at *8 (W.D.N.C. Feb. 27, 2013). This requirement arose out of the Plasmans' purported removal of Bolier funds from Decca USA accounts between the date of their employment termination on October 19, 2012 and the date when they were finally locked out of Bolier's premises on January 14, 2013. The Plasmans used these funds to pay their purported wages, expenses, and attorney's fees after their employment was terminated.

{18} The Plasmans did not return the funds as ordered by the Federal Court, and after the matter was remanded to this Court, the Court, in its May 26 Order,

granted Decca USA's Motion to Enforce [the Federal Court's P.I.] Order and ordered that:

> The Plasmans shall pay to Decca USA all Funds at Issue that the Plasmans diverted from Bolier to themselves or to any bank account under their control that were used to pay the Plasmans' purported wages, expenses, and attorney's fees after their employment with Bolier was terminated on October 19, 2012, in the total amount of at least $62,192.15 plus interest at the legal rate of 8% per annum from March 6, 2013, within thirty (30) days of the entry of this Order and Opinion, such funds to be payable by certified check[.]

*Bolier & Co., LLC v. Decca Furniture (USA), Inc.*, 2015 NCBC LEXIS 55, at *40 (N.C. Super. Ct. May 26, 2015).

{19} The Plasmans have not yet returned to Decca USA the diverted funds. The Plasmans never appealed the Federal Court P.I. Order and only filed a Response to Court Order seeking clarification as to the order to repay diverted funds. The Federal Court did not respond to the Plasmans' Response prior to remand. On June 25, 2015, the Plasmans filed a Notice of Appeal of this Court's May 26 Order, including the portions of the Order enforcing the Federal Court P.I Order's requirement that the Plasmans return the diverted funds.

{20} This Court subsequently concluded that because the May 26 Order "simply ordered [the] Plasmans to comply with the never-appealed, legally valid and binding, 2013 P.I. Order," the appeal of the May 26 Order was interlocutory, did not affect a substantial right, and therefore did not stay the case. *Plasman v. Decca Furniture (USA), Inc.*, 2015 NCBC LEXIS 90, at *12, *14 (N.C. Super. Ct. Oct. 2, 2015).

{21} After this Court concluded that the case was not stayed, the Plasmans continued not to comply with the May 26 Order and again filed a motion to clarify this Court's holding. The Court again affirmed its conclusion that the appeal of the May 26 Order did not stay the case or affect a substantial right. *Plasman v. Decca Furniture (USA), Inc.*, 2015 NCBC LEXIS 101, at *11 (N.C. Super Ct. Oct. 26, 2015). The Plasmans have continued to refuse to comply with the May 26 Order's directive to return the diverted funds.

{22} After the Court issued the Show Cause Order, the Plasmans, rather than complying with the Show Cause Order's instruction to submit evidence for *in camera* review or making a good faith effort to seek clarification, submitted, only minutes before the filing deadline, a document entitled Objections to Show Cause Production, Notice of Conditional Intent to Comply with Show Cause, and Request for Clarification ("Request"). The Court found that filing to be "procedurally improper, substantively without merit, and completely baseless as a purported excuse to comply with the clear terms of the Court's Show Cause Order." (Order on Pl.'s and Third Party Def.'s Obj. to Show Cause 4.)

{23} While the May 26 Order found that the Plasmans' response to the Federal Court's P.I. Order reflected "a genuine dispute (or at least the Plasmans' genuine confusion) concerning [their obligations]," *Bolier & Co.*, 2015 NCBC LEXIS 55, at *29, the Court finds that the Plasmans' belabored and continuing refusal to return the diverted funds in the face of this Court's repeated directives to do so reflects "knowledge and stubborn resistance" to the May 26 Order. The Court also finds that the Plasmans have acted with a "bad faith disregard for authority and the law" by improperly seeking to reargue the merits of the May 26 Order in this Court and the Court's conclusion that the matter is not stayed pending appeal. The Court therefore finds that the Plasmans are in willful noncompliance of the May 26 Order. N.C. Gen. Stat. § 5A-21(a)(2a).

c. Ability to Comply

{24} For civil contempt to apply, the Court must find that the alleged contemnor has the present ability to comply or to take reasonable measures to enable compliance. N.C. Gen. Stat. § 5A-21(a)(3). An individual's ability to comply is essential to a finding of civil contempt, because a person cannot willfully fail to comply with a court order if the person never had the means to do so. *Teachey v. Teachey*, 46 N.C. App. 332, 334, 264 S.E.2d 786, 787 (1980) (quoting *Lamm v. Lamm*, 229 N.C. 248, 250, 49 S.E.2d 403, 404 (1948)).

{25} The May 26 Order required the Plasmans to return to Decca USA "all Funds at Issue that the Plasmans diverted from Bolier to themselves . . . in the total

amount of at least $62,192.15, plus interest at the legal rate of 8% per annum from March 6, 2013 . . . ." *Bolier & Co.*, 2015 NCBC LEXIS 55, at *40. The Court finds that on February 10, 2016, the day of the Show Cause Hearing, the Plasmans owed $76,791.12, inclusive of interest. Shared equally between the Plasmans, this amounts to $38,395.56 each, although the Court has not ordered any particular payment structure as between the two Plasmans and each is responsible for payment of the total amount.

{26} When the underlying order requires the payment of money, our courts have held that "reasonable measures" to enable compliance could include "borrowing the money, selling defendant's . . . property . . . , or liquidating other assets, in order to pay the arrearage." *Teachey* at 334–35, 264 S.E.2d at 787–88. "Reasonable measures may well include liquidating equity in encumbered assets." *Adkins v. Adkins*, 82 N.C. App. 289, 291–92, 346 S.E.2d 220, 222 (1986). The Court may also look broadly at an individual's access to cash, regardless of source. *See GMAC v. Wright*, 154 N.C. App. 672, 677–78, 573 S.E.2d 226, 229 (2002) (upholding contempt order where trial court considered contemnor's regular income, a lump sum insurance settlement, and funds borrowed from a commercial lender). In short, the Court "should take an inventory of the property of the [alleged contemnor]; find what are his assets and liabilities and his ability to pay and work—an inventory of his financial condition." *Vaughn v. Vaughn*, 213 N.C. 189, 193, 195 S.E. 351, 353 (1938).

{27} In the Show Cause Order, the Court ordered the Plasmans to make available certain Financial Submissions of personal financial information relevant to the Court's inquiry, including individual tax returns, bank account statements, a list of real property assets, a personal balance sheet of all assets and liabilities, and information regarding investment accounts, IRAs, or other retirement funds. (Show Cause Order ¶ 14.) At the Show Cause Hearing, the Plasmans made no further evidentiary submissions regarding their ability to comply.

{28} The Court finds on the basis of the Plasmans' Financial Submissions that:

(1) Chris Plasman reported total taxable income of [REDACTED] on his 2014 federal tax return;

(2) Chris Plasman owns joint checking accounts with a balance of [REDACTED] as of Jan. 20, 2016;

(3) Chris Plasman possesses an individual IRA with a value of [REDACTED] as of January 15, 2016;

(4) Chris Plasman reported mortgages and unpaid legal fees as liabilities, but, whether with or without tenancy by the entirety property and associated debt, his net assets exceed his net liabilities by more than the amount owed under the May 26 Order, and he offered no evidence suggesting that he is unable to comply on the basis of these liabilities;

(5) Barrett Plasman reported total taxable income of [REDACTED] on his 2014 federal tax return; [2]

(6) Barrett Plasman owns a joint checking account and joint money market savings accounts totaling more than [REDACTED];

(7) Barrett Plasman possesses an individual IRA with a value of [REDACTED] as of December 31, 2015; and

(8) Barrett Plasman reported a mortgage and credit card obligations as liabilities, but, whether with or without tenancy by the entirety property and associated debt, his net assets exceed his net liabilities by more than the amount owed under the May 26 Order, and he offered no evidence suggesting that he is unable to comply on the basis of these liabilities.

The Court finds that the Plasmans have the present ability to comply with the May 26 Order because, considering their yearly incomes, their joint bank accounts, and their retirement accounts, they have "some amount of cash, or asset[s] readily converted to cash" sufficient to comply with the May 26 Order. *McMiller v.*

---

[2] The Plasmans broadly argue that they both filed joint returns with their spouses. They do not, however, offer evidence of what amounts of income, if any, should be attributed to their spouses, and, if so, why Chris and Barrett Plasman cannot access those funds.

*McMiller*, 77 N.C. App. 808, 809, 336 S.E.2d 134, 135 (1985) (describing the "present ability to pay" test).

{29} At the Show Cause Hearing, the Plasmans argued that the Court could not consider the Plasmans' jointly held assets—joint bank accounts and their primary residences owned as tenants by the entirety with their respective spouses[3]—or each Plasman's individual retirement assets in assessing their ability to comply, because those assets are either not individually alienable or are statutorily barred from collection actions. That argument, however, mischaracterizes the nature of a contempt proceeding, in which the court simply asks whether the contemnor possesses sufficient assets to comply with the court's prior order. *Adkins*, 82 N.C. App. at 291, 346 S.E.2d at 222 (1986) (dismissing a similar argument by clarifying that "[t]he standard is not having property free and clear of any liens, but rather that one has the present means to comply with the court order and hence to purge oneself of the contempt"). Because this contempt order and its purge provision are not orders of execution or attachment, the Court concludes that it may properly consider the Plasmans' jointly held assets and their individually-held retirement accounts.

{30} First, the Court acknowledges that real property owned by spouses as tenants by the entirety cannot be transferred or encumbered in any way without the written joinder of both spouses. N.C. Gen. Stat. § 39-13.6. Recent appellate cases demonstrate the impropriety of considering, as evidence of ability to comply, real property held as tenants by the entirety absent evidence that the other spouse has consented to encumbering or liquidating that property. *Spears v. Spears*, No. COA14-1133, 2016 N.C. App. LEXIS 134, at *29 (N.C. Ct. App. Feb. 2, 2016) (unpublished) (vacating contempt order where the trial court faulted defendant "for failing to force his second wife to sell their beach house despite the fact that defendant testified that they owned the house as tenants by the entirety"); *Willard*

---

[3] Chris and Barrett Plasman each own real property with their respective spouses. This evidence was included in their Financial Submissions, but the Court need not base its findings of fact on the real property. Nevertheless, the legal discussion of the real property is relevant to the Court's conclusions regarding the joint bank accounts.

*v. Willard*, No. COA15-227, 2015 N.C. App. LEXIS 916, at \*14 (N.C. Ct. App. Nov. 17, 2015) (unpublished) (reversing contempt order where trial court affirmatively found that defendant could access the equity in his home despite evidence that the home was owned as tenants by the entirety). The error in both of those cases was evidentiary, because each trial court found that defendants could individually convert their real property to cash without any evidence overcoming the statutory bar on the unilateral alienation of such property. *E.g.*, *id.* at \*18–19 ("[T]he trial court's findings regarding defendant's ability to . . . access equity in the house are *not supported by the evidence*.") (emphasis added). Neither case, however, prohibits a trial court's consideration of jointly held assets in a contempt proceeding as a matter of law.

{31} Jointly held personal property is not subject to the same protections as real property held as tenants by the entirety. "[I]t has long been the rule that an estate by the entirety in personal property is not recognized in North Carolina." *Lovell v. Rowan Mut. Fire Ins. Co.*, 302 N.C. 150, 156, 274 S.E.2d 170, 174 (1981). Unlike with real property, the default rule in North Carolina is that either party has full access to the total balance of a joint bank account. N.C. Gen. Stat. § 54C-165(a) (stating that withdrawals from or pledges of a joint account require only one signature, unless the parties agree otherwise); *see also* N.C. Gen. Stat. § 41-2.1(b)(1) (stating that for deposit accounts among two or more people with rights of survivorship "[e]ither party to the [deposit account] agreement may add to or draw upon any part or all of the deposit account . . ."). The Plasmans have not provided any evidence that the terms of their joint accounts are contrary to North Carolina's default rule. Therefore, the Court concludes that it can consider the funds in the Plasmans' joint banking accounts in evaluating their ability to comply. *See generally*, *Adams v. Adams*, No. COA04-851, 2005 N.C. App. LEXIS 1320, at \*8–9 (N.C. Ct. App. July 19, 2005) (unpublished) (affirming civil contempt order where the trial court considered amounts in joint checking accounts as evidence of ability to comply).

{32} Second, the Court's authority to consider assets in retirement accounts is clearly supported by case law. Our Court of Appeals has upheld a trial court's finding of present ability to pay based on retirement assets in a 401K account. *Tucker v. Tucker*, 197 N.C. App. 592, 507, 679 S.E.2d 141, 144 (2009) ("Thus, the trial court properly considered the assets that defendant had available . . . and specifically based its conclusion regarding defendant's ability to pay upon . . . , *inter alia*, $6,200.00 from his 401K account."). The Court of Appeals reached the same conclusion in a case involving consideration of IRA accounts. *Dillingham v. Dillingham*, No. COA10-514, 2011 N.C. App. LEXIS 1309, at *22 (N.C. Ct. App. June 7, 2011) (unpublished). The defendant in *Dillingham* argued that the trial court could only consider for contempt purposes funds in his IRA accounts if there was evidence that he had "unfettered access" to those accounts. *Id.* at *19. The Court of Appeals dismissed this argument as unfounded and noted that defendant offered no evidence the he was restricted from accessing the IRA funds, or what penalty he might suffer for doing so. *Id.* at *19–20. The appellate court affirmed the lower court's ruling, which found that Defendant had sufficient funds in his IRA account to pay the full arrearage. *Id.* at *21–22.

{33} The Court therefore concludes that it may properly consider the Plasmans' joint bank accounts and their individually-held retirement accounts in assessing the Plasmans' present ability to comply. On the basis of Chris Plasman's taxable income of [REDACTED], his joint checking account of [REDACTED], and his individual IRA account of [REDACTED], the Court finds that Chris Plasman has the present ability to pay or take reasonable measures to pay the diverted funds as set forth in the May 26 Order. On the basis of Barrett Plasman's taxable income of [REDACTED], his joint accounts of more than [REDACTED], and his individual IRA account of [REDACTED], the Court finds that Barrett Plasman has the present ability to pay or take reasonable measures to pay the diverted funds as set forth in the May 26 Order. Having found that each Plasman individually has the present ability to comply, the Court finds that the Plasmans collectively have the present ability to comply with the May 26 Order.

{34} The Plasmans have not met their burden of proving that their noncompliance was not willful, nor have they proved that their noncompliance was due to an inability to pay. The Court therefore finds the Plasmans in civil contempt of Court.

B. Attorney's Fees

{35} Defendant's Motion for Contempt also moved the Court to sanction the Plasmans and award Decca USA attorney's fees and costs incurred in bringing the Motion for Contempt. (Def.'s Mem. Supp. Mot. Contempt 7.) This Court has recently reviewed North Carolina law on the award of attorney's fees in civil contempt proceedings. *Ray Lackey Enters., Inc. v. Vill. Inn Lakeside, Inc.*, 2016 NCBC LEXIS 9, at *35–37 (N.C. Super. Ct. Jan. 29, 2016). Attorney's fees are often available in civil contempt proceedings in certain domestic actions, but our appellate courts have indicated that express statutory authorization is required to award attorney's fees for civil contempt proceedings in all other instances. *Id.*; *Moss Creek Homeowners Ass'n v. Bissette*, 202 N.C. App. 222, 234, 689 S.E.2d 180, 188 (2010) ("[T]he cases cited by appellees in defense of the fee award support our case law that outside of the family law field, statutory authority is required for enforcement of contempt. . . . Therefore, we reverse the [award of attorney's fees.]").

{36} Defendant has not identified any such express statutory authority, moving the Court to award attorney's fees only on the basis of its inherent powers to sanction parties. (Def.'s Mem. Supp. Mot. Contempt 7.) Therefore, the Court must deny Defendant's request for attorney's fees.

C. Motion for Criminal Contempt

{37} Defendant's Motion for Criminal Contempt moves the Court, in the alternative, to hold the Plasmans in criminal contempt for their failure to comply with the May 26 Order. "A person who is found in civil contempt under this Article shall not, for the same conduct, be found in criminal contempt under Article 1 of this Chapter." N.C. Gen. Stat. § 5A-21(c). In light of the Court's determination as to civil contempt, Defendant's Motion for Citation of Criminal Contempt must be denied.

IV.

CONCLUSION

{38} **WHEREFORE**, having found that the Plasmans are in willful violation of the May 26 Order pursuant to N.C. Gen. Stat. § 5A-21, the Court **FINDS** and **CONCLUDES** that the Plasmans are in civil contempt of Court.

{39} The Court **ORDERS** that the Plasmans present themselves to the sheriff of Catawba County for arrest on September 1, 2016. The Plasmans may purge themselves of civil contempt by paying $76,791.12 to Decca USA.[4] The Court has given the Plasmans a delayed date for arrest to facilitate the marshalling of assets and payment in installments, if so desired.

{40} The Court **DENIES** the Plasmans' Motion to Stay, Defendant's Motion for Criminal Contempt, Defendant's Motion to Review Evidence, and Defendant's request for attorney's fees in its Motion for Civil Contempt.

{41} The Court **GRANTS** the Plasmans' Motion for Protective Order and will file a redacted version of this opinion on the Business Court's public docket. The Court will file an original, unredacted version under seal with the Clerk of Court, with appropriate instructions.[5]

---

[4] The sum represents the amount which the Plasmans were ordered to pay by the May 26 Order, inclusive of interest. *See supra* ¶ 25.

[5] The Court must file an original, unredacted version because "[w]here the trial court decides . . . documents . . . will not be made available for the public by the court, the documents should be sealed and included in the record, thereby providing a record for appellate review." *Virmani v. Presbyterian Health Servs. Corp.*, 350 N.C. 449, 469, 515 S.E.2d 675, 689 (1999). Consistent with the grant of the Plasmans' Motion for Protective Order, the Court will file the unredacted order, with the Financial Submissions as an attachment, under seal with the Catawba County Clerk of Superior Court with instructions that the document may only be viewed by the Plasmans and by court personnel for administrative purposes. Should this contempt order be appealed, the Court acknowledges that Defendant's counsel may wish to review the evidence on which the Court found contempt in order to argue its position. *See GMAC v. Wright*, 154 N.C. App. at 677, 573 S.E.2d at 229 (2002) (stating that appellate review of a finding of contempt is limited to a consideration of whether the findings of fact are supported by competent evidence and whether those factual findings are sufficient to support the judgment); *see also Virmani*, 350 N.C. at 469, 515 S.E.2d at 688–89 (recognizing that the opponent was deprived of the opportunity to review confidential documents and that as a matter of practicality the trial court had no better alternative). In that event, Defendant could properly petition the appellate court to unseal the document or seek attorney's eyes only access. *Id.* (holding that the trial court's ruling on purportedly confidential information will always be subject to appellate review).

**SO ORDERED**, this the 26th day of February, 2016.


                                             /s/ Louis A. Bledsoe, III
                                             Louis A. Bledsoe, III
                                             Special Superior Court Judge
                                              for Complex Business Cases